# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ANTHONY BOUKNIGHT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil No. 06-2118 (RMU)** |
| **v.** | ) | |
| | ) | |
| **DISTRICT OF COLUMBIA** | ) | |
| **GOVERNMENT** | ) | |
| **(FIRE AND EMS DEPARTMENT),** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## <u>DISTRICT OF COLUMBIA'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT</u>

Defendant District of Columbia, by and through undersigned counsel, hereby moves this Court to dismiss the plaintiff's Amended Complaint, or alternatively, grant summary judgment in the District's favor for the following reasons: 1) Mr. Bouknight failed to exhaust his administrative remedies with respect to any Title VII retaliation claim; 2) his re-assignment to another unit is a lateral transfer and, therefore, does not constitute an adverse action under Title VII; 3) Mr. Bouknight failed to allege a hostile work environment; 4) Mr. Bouknight failed to give notice consistent with D.C. Code § 12-309; 5) his tort claims are subsumed in his discrimination claim; and 6) Mr. Bouknight has failed to state a claim upon which relief may be granted on his claim of intentional infliction of emotional distress. A Memorandum of Points and Authorities and a proposed order is attached hereto.

Pursuant to Local Rule 7, the defendant is not required to seek the plaintiff's consent to a dispositive motion.

Respectfully submitted,

LINDA SINGER
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


_____/s/_____
PHILLIP A. LATTIMORE, III [422968]
Section Chief
General Litigation Section III


_____/s/_____
DANA K. DELORENZO
Assistant Attorney General
Bar Number 468306
Sixth Floor South
441 4th Street, N.W.
Washington, D.C. 20001
(202) 724-6515
(202) 727-3625 (fax)
E-Mail: dana.delorenzo@dc.gov



_____/s/_____
JAMES H. VRICOS [474026]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-6600
(202) 727-3625 (fax)
E-mail: James.Vricos@dc.gov

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTHONY BOUKNIGHT,      ) | |
|       ) | |
|    Plaintiff,    ) | |
|       ) | **Civil No. 06-2118 (RMU)** |
|    v.     ) | |
|       ) | |
| DISTRICT OF COLUMBIA    ) | |
| GOVERNMENT    ) | |
| (FIRE AND EMS DEPARTMENT),    ) | |
|       ) | |
|    Defendant.    ) | |
| _____) | |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DISTRICT OF COLUMBIA'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT</u>

Defendant District of Columbia, by and through undersigned counsel, hereby submits this memorandum of points and authorities in support of its motion to dismiss, or alternatively, for summary judgment.

### *Background*

Mr. Bouknight filed the above-referenced employment discrimination Complaint on December 13, 2006. On January 26, 2007, he filed an Amended Complaint. The District of Columbia is the only named defendant in the Amended Complaint.

Mr. Bouknight is a District of Columbia paramedic. (Amended Complaint at ¶ 7.) He alleges that after transporting a patient in an emergency vehicle on August 6, 2005, his agency received a complaint by a patient's mother. Consequently, on September 4, 2005, Mr. Bouknight and his partner were transferred to separate units. (Amended Complaint at ¶ 24.) Mr. Bouknight alleges that "Captain Thompkins informed [him] that he had been transferred because

he is [B]lack and she, the Captain, is [B]lack and that [the other paramedic] is White, and that although [Mr. Bouknight] had done nothing wrong, he was being transferred because he is [b]lack.")  (Amended Complaint at ¶ 25.)

In October 2005, Mr. Bouknight was notified that his superiors were recommending that he receive a suspension for negligent or careless work performance.  (Amended Complaint at ¶ 27.)

In January 2006, Mr. Bouknight was "subsequently suspended for nine calendar days and threatened with other disciplinary action."  (Amended Complaint at ¶ 28.)  Mr. Bouknight alleges that he has "received differential treatment, has been subjected to adverse employment actions and disparaging treatment from his supervisors based on his race and in reprisal for filing an EEO Complaint."  (Amended Complaint at ¶ 39.)[1]  In addition, he alleges "a hostile workplace environment and reprisal due to his race."  (Amended Complaint at ¶ 36.)

Mr. Bouknight's styles his Amended Complaint and identifies the following legal theories: disparate discrimination (race and reprisal), intentional infliction of emotional distress, negligence, negligent hiring and supervision and hostile work environment.

Mr. Bouknight filed an EEOC Charge in December 2005 based on race discrimination *only*. (*See* EEOC Charge, attached hereto as Exhibit A.)  In it, he alleged that he was being transferred to another medic unit because of his race.  (Exhibit A.)  Notably, Mr. Bouknight neither included a claim of retaliation in his charge nor did he check the box marked "retaliation." (Exhibit A.)  Mr. Bouknight's EEOC Charge did not allege any facts to support a claim of a hostile work environment.  (Exhibit A.)

---

[1] However, the only adverse employment action articulated in the Amended Complaint appears to be the nine-day suspension.  *See* Part II, *infra*.

Mr. Bouknight amended his EEOC Charge in March 2006 to include further allegations of racial discrimination.  (*See* Amendment, attached hereto as Exhibit B.)   In his amendment, he stated that "the Respondent has discriminated against me based upon my race (African-American), when, on January 20, 2006, Respondent notified me that I would be suspended without pay for nine (9) calendar days, effective 0700 hours Friday, February 11, 2006, through 0700 hours February 20, 2006."  (Exhibit B.)   Notably, this amendment neither included a claim of retaliation nor did it even allege that the suspension was the result of any protected activity. (Exhibit B.)  Mr. Bouknight's amended EEOC Charge did not allege any facts to support a claim of a hostile work environment.  (Exhibit B.)

Mr. Bouknight did not file any notice consistent with D.C. Code § 12-309.  (*See* Affidavit by Mia Powell-Liley, attached hereto as Exhibit C.)

### *Standard of Review*

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted when it appears that, under any reasonable reading of the complaint, the plaintiff will be unable to prove any set of facts that would justify relief.  *Conley v. Gibson*, 355 U.S. 41, 45 (1957).  The movant, therefore, is entitled to judgment if there are no allegations in the complaint that, even if proven, would provide a basis for recovery.  *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987).

Although the non-moving party enjoys the benefit of all inferences that plausibly can be drawn from well-pleaded allegations of his complaint, bare conclusions of law, or sweeping and unwarranted averments of fact, will not be deemed admitted for purposes of a motion under Rule 12(b)(6).  *Id.*   The court need not accept inferences drawn by the plaintiff if such inferences are unsupported by the facts set out in the complaint, "[n]or must the court accept legal conclusions

cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

On the other hand, summary judgment must be granted if the moving party demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Although the movant has the burden of demonstrating the absence of a genuine issue of material fact, the "moving party is not required to support its motion for summary judgment with 'affidavits or other similar materials *negating* the opponent's claim.'" *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033 (D.C. Cir. 2003). At this point, then, "the burden shifts to the non-movant to 'come forward with 'specific facts showing that there is a genuine issue for trial.'" *Shaw v. District of Columbia*, 2006 U.S. Dist. LEXIS 26904 *14 (internal citations omitted).

The non-moving party to a motion for summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but the [plaintiff's ] response, by affidavits, deposition testimony, or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue for trial." To be genuine, the issue must be supported by evidence sufficiently admissible that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see also Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987). Moreover, if the non-moving party "does not so respond, summary judgment, if appropriate, shall be entered" against her. Fed. R. Civ. P. 56(e).

By either burden of proof, Mr. Bouknight's claims against the District cannot stand.

Therefore, the Court should grant the instant Motion.[2]

### *Argument*

### 1.  MR. BOUKNIGHT FAILED TO EXHAUST ADMINISTRATIVE REMEDIES WITH RESPECT TO ANY TITLE VII RETALIATION CLAIM.

A discrimination suit "following an EEO complaint is limited to 'claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.''"  *See Broderick v. Donaldson*, 338 F. Supp. 2d 30, 39 (D.D.C. 2004) (internal citations omitted).[3]  The importance of this requirement is to give the defendant employer notice of the claims against it.

In *Marshall v. Federal Express Corp*., 130 F.3d 1095, (D.C. 1997)*,* the D.C. Circuit stated:

> Before bringing suit in federal court, ADA plaintiffs, like those under Title VII, must exhaust their administrative remedies by filing an EEOC charge and giving that agency a chance to act on it. 42 U.S.C. § 12117(a); *Park v. Howard University,* 315 U.S. App. D.C. 196, 71 F.3d 904, 907-09 (D.C. Cir. 1995). A vague or circumscribed EEOC charge will not satisfy the exhaustion requirement for claims it does not fairly embrace. "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Schnellbaecher v. Baskin Clothing Co.,* 887 F.2d 124, 127 (7th Cir. 1989).* Naturally every detail of the eventual complaint need not be presaged in the EEOC filing, but the substance of an ADA claim, like that of a Title VII claim, must fall within the scope of "the administrative investigation that can reasonably be expected to follow the charge of discrimination."

*Id*. at 1098.

---

[2] To the extent that any of Mr. Bouknight's claims remain after the Court issues an Order on this Motion, the District would respectfully request that the Court issue an Order requiring the District to file an Answer to any such claim(s) within 10 days.

[3] The District notes that courts routinely apply the same standards to evaluate Title VII claims as they do ADA claims, ADEA claims, and even ERISA claims." *See Brown v. Brody,* 199 F.3d 446, 456 n. 10 (D.C. Cir. 1999).  Therefore, undersigned counsel may use case law interpreting these different statutes interchangeably.

As in *Marshall*, 130 F.3d at 1098, where the D.C. Circuit held that Plaintiff's discriminatory termination claim failed because she neither mentioned it in her EEOC charge nor amended her charge to bring her termination to the EEOC's attention, Mr. Bouknight's retaliation claim must likewise fail. Here, Mr. Bouknight filed an EEOC Charge in December 2005 based on race discrimination *only*. (*See* Exhibit A.)  In it, he alleged that he was being transferred to another medic unit because of his race. (Exhibit A.)  Neither the narrative section of this Charge included a claim of retaliation nor did Mr. Bouknight check the box marked "retaliation." (Exhibit A.)

Moreover, when Mr. Bouknight amended his EEOC Charge in March 2006, he only included further allegations of racial discrimination. (*See* Exhibit B.)  He stated that "the Respondent ha[d] discriminated against [him] based upon [his] race (African-American), when, on January 20, 2006, Respondent notified me that I would be suspended without pay for nine (9) calendar days. . . " (Exhibit B.)  The amendment neither included a claim of retaliation nor did it allege that the suspension was the result of any protected activity. (Exhibit B.)  Although Mr. Bouknight had knowledge that his agency had recommended his suspension some two months before he filed his initial EEOC charge (see Amended Complaint at ¶ 27), and that he had, in fact, been suspended for nine days some two months before he filed his amended EEOC Charge, Mr. Bouknight decided not to file a retaliation claim with the EEOC in either December 2005 or March 2006. Neither of Mr. Bouknight's two EEOC Charges can be reasonably interpreted to describe retaliatory conduct.[4]  *See Carroll v. England,* 321 F.Supp.2d 58, 65 (D.D.C. 2004) (this Court adopting the Seventh Circuit's interpretation of the "reasonably related" requirement to mean that an "EEOC Charge and the complaint must, at a . . . minimum, describe the *same*

---

[4] Plaintiff's assertion that the District retaliated against him because of his race (Amended Complaint at ¶ 36) must also fail because Plaintiff has not alleged that he was engaged in any protected activity.

*conduct* and implicate the *same individuals*.").  To allow Mr. Bouknight to assert a retaliation claim against the District would "circumvent EEOC's investigatory and conciliatory role," as well as deprive the District of notice of this claim.  *Marshall,* 130 F.3d at 1098.  Accordingly, summary judgment should be granted in the District's favor on any claims based on retaliation or reprisal because Mr. Bouknight failed to assert these factual claims (retaliation based on race or for filing an EEOC charge) in his charge; thus, he has not exhausted his administrative remedies.[5]  *See Mianegaz v. Hyatt Corp,* 319 F.Supp.2d 13, 17 (D.D.C. 2004) (plaintiff's termination claim failed because she failed to exhaust her administrative remedies because "plaintiff's EEOC complaint refers only to his suspensions, making no mention of his termination").

### 2. PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED WITH RESPECT HIS RE-ASSIGNMENT TO ANOTHER UNIT BECAUSE A RE-ASSIGNMENT IS NOT AN ADVERSE ACTION.

The Amended Complaint alleges that Mr. Bouknight learned that "effective September 4, 2005, he and his partner, Paramedic Shook, were being transferred from their assignment on Medic 1 and were being sent to separate units."  (Amended Complaint at ¶ 24.)  However, the plaintiff cannot recover for this re-assignment because it is a lateral transfer and is not an adverse action.

In *Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999), the District of Columbia Circuit re-affirmed the standard when a plaintiff makes a disparate treatment claim or a retaliation claim pursuant to Title VII, as Mr. Bouknight claims to do in the instant case:

> … to state a *prima facie* claim of disparate treatment discrimination, the plaintiff must establish that (1) she is a member of a … protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. For retaliation claims, such as the one Brown alleges, the *prima facie* requirements are slightly different. The plaintiff must show "1) that she engaged in a statutorily protected activity; 2) that the employer took an adverse

---

[5] Summary judgment should also be granted in the defendant's favor on any hostile work environment claim because Mr. Bouknight similarly failed to exhaust administrative remedies.  (*See* Exhibits A and B.)

personnel action; and 3) that a causal connection existed between the two."

*Id.* at 452.

Moreover, the *Brown* court specifically held that a lateral transfer is not an actionable injury:

> A plaintiff … who is made to undertake or who is denied a lateral transfer--that is, one in which she suffers no diminution in pay or benefits--does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm.

*Id.* at 457.  In this case, Mr. Bouknight has not alleged that his re-assignment from Medic 1 to another unit resulted in any diminution in pay or benefits or that he suffered any other materially adverse consequences.  Consequently, the lateral transfer is not an actionable injury because it does not constitute an adverse action.  *Id.*  Accordingly, Mr. Bouknight has not set forth sufficient facts to establish a *prima facie* case disparate treatment or retaliation for this re-assignment.  Therefore, any claims based on his re-assignment should be dismissed with prejudice.

### 3.  MR. BOUKNIGHT'S AMENDED COMPLAINT DOES NOT STATE A HOSTILE WORK ENVIRONMENT CLAIM ON WHICH RELIEF CAN BE GRANTED.

In his Amended Complaint, Mr. Bouknight alleges that he was "subjected to … a hostile work environment." (Amended Complaint at ¶ 36.)  However, his hostile workplace claim must be dismissed because the Amended Complaint does not allege any facts on which such a claim can be based.  Because a plaintiff asserting a hostile work environment need not allege a concrete, tangible employment action, there is considerable risk of abuse and overuse of this type of claim.  The Supreme Court intentionally has made it difficult to establish a hostile work environment, so that "these standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  According to the Court, a plaintiff can claim discrimination based on a

10

hostile work environment only "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993) (quotation omitted); *see Stewart v. Evans*, 275 F.3d. 1126, 1133 (D.C. Cir. 2002); *Barbour v. Browner*, 181 F.3d 1342, 1347-48 (D.C. Cir. 1999); *Gary v. Long*, 59 F.3d 1391, 1395 (D.C. Cir. 1995); *see also Brown v. Brody*, 199 F.3d 446, 454 (D.C. Cir. 1999) (holding that a hostile workplace environment can be actionable only "if the work atmosphere was 'so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers.'").

"To establish a claim of a hostile work environment, a plaintiff must demonstrate: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment occurred because of the plaintiff's protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question but nonetheless failed to either take steps to prevent it or afford the plaintiff prompt remedial action." *Glenn v. Williams*, 2006 U.S. Dist. LEXIS 8687 * 103. The Supreme Court has held that, "[i]n determining whether an actionable hostile work environment claim exists, we look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *AMTRAK v. Morgan*, 536 U.S. 101 , 116 (2002), *citing Harris*, 510 U.S. at 21.

Here, Mr. Bouknight has not alleged the type of conduct that can support a hostile workplace claim. The Amended Complaint – at best – alleges two distinct actions, namely his transfer and his suspension. *But see* Parts I and II (arguing that the transfer and the suspension

are not actionable in this case). These isolated actions, even when analyzed together, are

patently insufficient to survive a Rule 12(b)(6) challenge. Mr. Bouknight did not allege that any

threatening, demeaning or offensive racial words were made in the workplace nor did he allege

that his workplace conditions interfered with his work environment or his ability to do his work.

Moreover, he did not complain to management about working in an allegedly hostile working

environment due to his race and he did not make such allegations in his EEOC charge. *See* Part

I, *supra*. Accordingly, Mr. Bouknight's hostile work environment claim should be dismissed

with prejudice. *See Brooks-Miller v. England*, 2004 U.S. Dist. LEXIS 16535, 8-10 (D.D.C.

2004) (dismissing hostile work environment claim "because, in addition to failing to allege how

Arrington's conduct constitutes 'severe and pervasive' behavior, the plaintiff also fails to suggest

why she believes the alleged harassment occurred on account of her race, and how the

harassment affected a term, condition, or privilege of her employment.").

**4.** **SUMMARY JUDGMENT MUST BE ENTERED IN THE DISTRICT'S FAVOR ON THE PLAINTIFF'S TORT CLAIMS AND D.C. HUMAN RIGHTS ACT CLAIM BECAUSE THE PLAINTIFF FAILED TO COMPLY WITH THE NOTICE REQUIREMENTS OF D.C. CODE § 12-309.**

Mr. Bouknight alleged several common law claims, including intentional infliction of

emotional distress, negligence and negligent hiring and supervision. The plaintiff also references

the D.C. Human Rights Act in paragraph 1. However, summary judgment must be entered in the

District's favor on all of these claims because the plaintiff failed to give notice consistent with

D.C. Code § 12-309.

Pursuant to D.C. Code § 12-309:

An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

The requirement of compliance with the time limit specified in § 12-309 is absolute, strict, and unqualified. In *District of Columbia v. Dunmore*, the D.C. Court of Appeals held that § 12-309 must be construed narrowly against claimants, writing:

> Section 12-309 is not, and does not function as, a statute of limitations. Rather, it imposes a notice requirement on everyone with a tort claim against the District of Columbia, and *compliance with its terms is "mandatory as a prerequisite to filing suit against the District*." [citations omitted]

662 A.2d 1356, 1359 (D.C. 1995) (emphasis added).

The *Dunmore* court also emphasized that, for purposes of calculating the timeliness of a § 12-309 letter, "the six-month clock begins to run from the moment the plaintiff sustains the injury." *Id.*; *see also DeKine v. District of Columbia*, 422 A.2d 981, 986 (D.C. 1980) (affirming dismissal of action for false arrest where §12-309 letter arrived *one day* late); *Kelton v. District of Columbia*, 413 A.2d 191, 921 (D.C. 1980) ("§ 12-309 starts the clock at the moment 'the injury or damage was sustained'").

Here, Mr. Bouknight has not satisfied the mandatory notice provisions of D.C. Code § 12-309 because he failed to file any notice relating to any of the incidents described in his Complaint. (*See* Affidavit by Mia Powell-Liley, attached hereto as Exhibit C.) Accordingly, summary judgment must be granted in the District's favor on his common law claims (e.g., intentional infliction of emotional distress, negligence and negligent hiring and negligent supervision). In addition, litigants who sue the District under the D.C. Human Rights Act must comply with D.C. Code §12-309. *See George McFarlane v. New Leaders for New Schools, et al*, Civil Action No. 04-8506 (D.C. Super. Ct, Nov. 10, 2005) (Canan, J.) (concluding that D.C. Code § 12-309 applies to the D.C. Human Rights Act).[7] Therefore, in the absence of any proper § 12-309 notice for Mr. Bouknight's purported D.C. Human Rights Act claim, summary

judgment must also be entered in the District's favor on that claim.

**5. ALTERNATIVELY, PLAINTIFF'S TORT CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE NOT INDEPENDENT OF HIS DISCRIMINATION CLAIM.**

In addition to his discrimination claim, Mr. Bouknight alleges claims based on intentional infliction of emotional distress (Count II), negligence (Count III) and negligent supervision and hiring (Count IV). Specifically, Count II of the Amended Complaint alleges that "[d]efendant by and through its employees committed the discrimination intentionally and caused Plaintiff severe emotional distress and embarrassment." (Amended Complaint at ¶ 45.) Count III alleges that "Defendant owed Plaintiff the duty to allow him to work in an environment free of discrimination, and a hostile work environment." (Amended Complaint at ¶ 49.) Further, Count III alleges that the "above negligent acts and/or omissions by Captain Thompkins, directly and proximately caused significant injuries and losses, economic and non-economic, to the Plaintiff." (Amended Complaint at ¶ 52.) Finally, Count IV alleges that the District is liable under *respondeat superior* for Captain Thompkins and is liable for her negligence and that the District "had a duty to refrain from hiring Captain Thompkins and/or to properly supervise" her. (Amended Complaint at ¶ 60; 58.) Notably, Count IV incorporates all of the factual allegations in the Amended Complaint. (Amended Complaint at ¶ 53.)

However, even if the Court finds that Mr. Bouknight complied with the notice requirement of D.C. Code § 12-309, these three tort claims should be dismissed with prejudice because those claims are not independent of the discrimination claim and are subsumed in his discrimination claim. *See Chambliss v. Amtrak*, 2007 U.S. Dist. LEXIS 11522 *97 n.25 ("To the extent that Plaintiff bases his claim of intentional infliction of emotional distress on the 'racial discrimination practiced against him,' Compl. at 7, P 25, the Court notes that this conduct is

---

[7] Judge Canan's Order is attached hereto as Exhibit D.

addressed by Plaintiff's discrimination claim."). *See also McCray v. Veneman*, 298 F. Supp. 2d 13, 14 (D.D.C. 2002) (internal citations omitted) (dismissing federal employee's intentional infliction of emotional distress claim because it "arose out of defendants' 'failure to compete for employment and promotional opportunities arising out of the tortuous behavior of the Defendants'" and "is not independent of the alleged employment discrimination …"). *See also Wade v. Wash. Metro. Area Transit Auth.*, 2005 U.S. Dist. LEXIS 12972 *19, *citing*, *Brown v. General Services Administration*, 425 U.S. 820, 834-35 (1976) (granting summary judgment in favor of the employer on the employee's negligence claim because the "precisely drawn, detailed Title VII preempts the more general common law negligence remedy.").

As Mr. Bouknight has not made allegations for these tort claims that are distinct from his discrimination allegations, his claims of intentional infliction of emotional distress (Count II), negligence (Count III) and negligent supervision and hiring (Count IV) should be dismissed with prejudice.

6. **MR. BOUKNIGHT'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM SHOULD BE DISMISSED FOR FAILURE TO ALLEGE "EXTREME AND OUTRAGEOUS" CONDUCT.**

Even making all reasonable inferences in Mr. Bouknight's favor, the Amended Complaint has not alleged conduct that is severe enough to state a claim for intentional infliction of emotional distress. The D.C. Court of Appeals has held that "[e]stablishing a *prima facie* case of intentional infliction of emotional distress requires a showing of '(1) extreme and outrageous conduct on the part of the defendants, which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress.'" *Futrell v. Department of Labor Federal Credit Union*, 816 A.2d 793, 808 (D.C. 2003) (*quoting Paul v. Howard Univ.*, 754 A.2d 297, 307 (D.C. 2000)).

While the standard for proving and intentional infliction of emotional distress claim generally is rigid, it is even more stringent in the context of employment disputes. The D.C. Court of Appeals explained, "We have been exacting as to the proof required to sustain such claims 'in an employment context.' The conduct alleged must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" *Futrell*, 816 A.2d at 808 (*quoting Paul*, 754 A.2d at 307-08); *see also Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (D.C. 1997) (quoting *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991) and Restatement (Second) of Torts § 46 cmt. d (1965)). Thus, in the employment context, such a standard has been extremely difficult to meet. In fact, the D.C. Court of Appeals has noted, that "generally, employer-employee conflicts do not rise to the level of outrageous conduct." *Duncan v. Children's Nat'l Med. Ctr.*, 702 A.2d 207, 211-12 (D.C. 1997).

The D.C. courts have followed this standard by dismissing all but the most egregious intentional infliction of emotional distress claims brought against employers. *See Cowley v. North American Telecommunications Assn.*, 691 A.2d 1169, 1172 (D.C. 1997) (internal citations omitted) (affirming dismissal of plaintiff's intentional infliction of emotional distress claim because he "alleges only that he was subjected to contempt, scorn and other indignities in the workplace by his supervisor and an unwarranted evaluation and discharge. While offensive and unfair, such conduct is not in itself of the type actionable on this tort theory."). *See also Kerrigan*, 705 A.2d at 628 (finding conduct not extreme and outrageous when plaintiff's employer allegedly manufactured evidence to establish a claim of sexual harassment against plaintiff and then demoted him and leaked information to other employees); *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 35 (D.C. 1991) (concluding that, under particular circumstances, it was not extreme and outrageous to dismiss employee for refusing to disobey law by driving

16

truck without proper inspection sticker); *Waldon v. Covington*, 415 A.2d 1070, 1077-78 (D.C. 1980) (finding conduct not outrageous when employer refused to give employee-professor keys to laboratory and notice of departmental meetings, threatened to begin actions to test competency with aim to terminate, and assigned employee classes outside specialty knowing it would cause difficulty and embarrassment); *Hoffman v. Hill & Knowlton, Inc.*, 777 F. Supp. 1003, 1005 (D.D.C. 1991) (finding conduct not outrageous when employer intentionally interfered with employee's ability to do job, stated false, pretextual reasons for dismissing an employee knowing it would be communicated to others, and dismissed employee).

Here, Mr. Bouknight's transfer and suspension, which he claims were unlawfully based on his race, simply do not rise to the level of extreme and outrageous conduct that is required to sustain an intentional infliction of emotional distress claim. Therefore, as a matter of law, his claim of intentional infliction of emotional distress should be dismissed.

WHEREFORE, the District respectfully requests the relief sought herein.

Respectfully submitted,

LINDA SINGER
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_____/s/_____
PHILLIP A. LATTIMORE, III [422968]
Section Chief
General Litigation Section III

_____/s/_____
DANA K. DELORENZO [468306]
Assistant Attorney General
Sixth Floor South
441 4th Street, N.W.
Washington, D.C. 20001

(202) 724-6515
(202) 727-3625 (fax)
E-Mail: dana.delorenzo@dc.gov


_____/s/_____

JAMES H. VRICOS [474026]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-6600
(202) 727-3625 (fax)
E-mail: James.Vricos@dc.gov

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ANTHONY BOUKNIGHT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil No. 06-2118 (RMU)** |
| **v.** | ) | |
| | ) | |
| **DISTRICT OF COLUMBIA** | ) | |
| **GOVERNMENT** | ) | |
| **(FIRE AND EMS DEPARTMENT),** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to F.R.C.P. 56, the District submits the following statement of undisputed material facts in support of its Motion for Summary Judgment:

1. Mr. Bouknight filed an EEOC Charge in December 2005 based on race discrimination *only*. (*See* Exhibit A.) In it, he alleged that he was being transferred to another medic unit because of his race. (Exhibit A.) Notably, Mr. Bouknight neither included a claim of retaliation in his charge nor did he check the box marked "retaliation." (Exhibit A.) Mr. Bouknight's EEOC Charge did not allege any facts to support a claim of a hostile work environment. (Exhibit A.)

2. Mr. Bouknight amended his EEOC Charge in March 2006 to include further allegations of racial discrimination. (*See* Exhibit B.) In his amendment, he stated that "the Respondent has discriminated against me based upon my race (African-American), when, on January 20, 2006, Respondent notified me that I would be suspended without pay for nine (9) calendar days, effective 0700 hours Friday, February 11, 2006, through 0700

19

hours February 20, 2006." (Exhibit B.)   Notably, this amendment neither included a

claim of retaliation nor did it even allege that the suspension was the result of any

protected activity.  (Exhibit B.)  Mr. Bouknight's amended EEOC Charge did not allege

any facts to support a claim of a hostile work environment.  (Exhibit B.)

3.  The plaintiff did not provide any notice to the District consistent with D.C. Code § 12-

309.  (*See* Exhibit C.)

Respectfully submitted,

LINDA SINGER
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

_____/s/_____
PHILLIP A. LATTIMORE, III [422968]
Section Chief
General Litigation Section III

_____/s/_____
DANA K. DELORENZO [468306]
Assistant Attorney General
Sixth Floor South
441 4th Street, N.W.
Washington, D.C. 20001
(202) 724-6515
(202) 727-3625 (fax)
E-Mail: dana.delorenzo@dc.gov

_____/s/_____
JAMES H. VRICOS [474026]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-6600
(202) 727-3625 (fax)
E-mail: James.Vricos@dc.gov

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ANTHONY BOUKNIGHT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil No. 06-2118 (RMU)** |
| **v.** | ) | |
| | ) | |
| **DISTRICT OF COLUMBIA** | ) | |
| **GOVERNMENT** | ) | |
| **(FIRE AND EMS DEPARTMENT),** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**ORDER GRANTING DISTRICT OF COLUMBIA'S MOTION TO DISMISS**

Upon consideration of the Defendant's Motion to Dismiss, any opposition thereto, and the facts and law considered, it is this ____ day of _____, 2007,

HEREBY ORDERED that the Defendant's Motion is GRANTED; and it is further

ORDERED that the plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE.

_____
The Honorable Ricardo M. Urbina
United States District Court for the District of Columbia

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ANTHONY BOUKNIGHT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil No. 06-2118 (RMU)** |
| **v.** | ) | |
| | ) | |
| **DISTRICT OF COLUMBIA** | ) | |
| **GOVERNMENT** | ) | |
| **(FIRE AND EMS DEPARTMENT),** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## ORDER GRANTING DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT

Upon consideration of the Defendant's Motion for Summary Judgment, any opposition

thereto, and the facts and law considered, it is this ____ day of _____, 2007,

HEREBY ORDERED that the Defendant's Motion is GRANTED; and it is further

ORDERED that the plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE.


_____
The Honorable Ricardo M. Urbina
United States District Court for the District of Columbia

# Exhibit A

| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION** | PER    FILING CHARGE |
|---|---|
| | Bouknight, Anthony |

| | THIS PERSON (check one) |
|---|---|
| | [X] CLAIMS TO BE AGGRIEVED |
| | [ ] IS FILING ON BEHALF OF ANOTHER |

Mr Adrian Thompson
Fire Chief
D C Fire And EMS
1018 13th Street, N W
3rd Floor
Washington, DC 20001

| DATE OF ALLEGED VIOLATION | |
|---|---|
| *Earliest* | *Most Recent* |
| 09/04/2005 | 09/04/2005 |

PLACE OF ALLEGED VIOLATION
Washington, DC

EEOC CHARGE NUMBER
10CA600065

FEPA CHARGE NUMBER
06-073-DC(CN)

# NOTICE OF CHARGE OF DISCRIMINATION   IN JURISDICTIONS WHERE A FEP AGENCY WILL INITIALLY PROCESS
*(See attached information sheet for additional information)*

YOU ARE HEREBY NOTIFIED THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

[X] Title VII of the Civil Rights Act of 1964
[ ] The Age Discrimination in Employment Act of 1967 (ADEA)
[ ] The Americans with Disabilities Act

HAS BEEN RECEIVED BY

[ ] The EEOC and sent for initial processing to _____ .
*(FEP Agency)*

[X] The D.C. Office Of Human Rights _____ and sent to the EEOC for dual filing purposes.
  *(FEP Agency)*

While EEOC has jurisdiction (upon the expiration of any deferral requirement if this is a Title VII or ADA charge) to investigate this charge, EEOC may refrain from beginning an investigation and await the issuance of the Agency's final findings and orders. These final findings and orders will be given weight by EEOC in making its own determination as to whether or not reasonable cause exists to believe that the allegations made in the charge are true.

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency in the course of its proceedings will be considered by the Commission when it reviews the Agency's final findings and orders. In many instances the Commission will take no further action, thereby avoiding the necessity of an investigation by both the Agency and the Commission. This likelihood is increased by your active cooperation with the Agency.

[X] As a party to the charge, you may request that EEOC review the final decision and order of the above named Agency. For such a request to be honored, you must notify the Commission in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further oy the Commission. Regardless of whether the Agency or the Commission processes the charge, the Recordkeeping and Non-Retaliation provisions of Title VII and the ADEA as explained in the "EEOC Rules and Regulations" apply.

For further correspondence on this matter, please use the charge number(s) shown.

[ ] An Equal Pay Act investigation (29 U.S.C. 206(d)) will be conducted by the Commission concurrently with the Agency's investigation of the charge.

[X] Enclosure: Copy of Charge

BASIS OF DISCRIMINATION

[X] RACE   [ ] COLOR   [ ] SEX   [ ] RELIGION   [ ] NAT. ORIGIN   [ ] AGE   [ ] DISABILITY   [ ] RETALIATION   [ ] OTHER

CIRCUMSTANCES OF ALLEGED VIOLATION

See enclosed Form 5, Charge of Discrimination.

| DATE | TYPED NAME/TITLE OF AUTHORIZED EEOC OFFICIAL | SIGNATURE |
|---|---|---|
| 12/06/2005 | Tulio L Diaz<br>Director | |

EEOC FORM 131-A (Rev. 06/92)                                    **RESPONDENT'S COPY**

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☒ FEPA<br>☐ EEOC | 06-073-DC(C4)<br>10 CA 600 065 |

D.C. Office Of Human Rights _____ and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Mr. Anthony Bouknight | |
| STREET ADDRESS                    CITY, STATE AND ZIP CODE | DATE OF BIRTH |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| D C Fire And EMS | Cat D (501 +) | (202) 673-3302 |
| STREET ADDRESS          CITY, STATE AND ZIP CODE | | COUNTY |
| 1018 13th Street, N W, 3rd Floor, Washington, DC 20001 | | 001 |

| NAME | | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|---|
| STREET ADDRESS          CITY, STATE AND ZIP CODE | | COUNTY |

**CAUSE OF DISCRIMINATION BASED ON** *(Check appropriate box(es))*

☒ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☐ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER *(Specify)*

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST | LATEST |
| 09/04/2005 | 09/04/2005 |
| ☐ CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

I believe I have been discriminated against in the terms, conditions, privileges and discipline in employment on the basis of my race (Black) for the following reasons:

Respondent hired me in December 1991, as a Paramedic.

In August 2005, a complaint was filed against my partner (White) and me. On August 22, 2005, I was ordered to respond in writing to the complaint filed against us.

On August 30, 2005, I was again asked to report to the Captain's (Black) office and I complied. When I arrived, there was no Union representative; however there was another Captain (White) present. At this meeting I was assured that no disciplinary action would be taken against me, as my partner (White) had admitted to what the complaint alleged.

On September 4, 2005, I was informed that I would be transfered to another unit. At that time, my Captain (Black) told me that I was being moved because I was Black, she was Black and my partner is White; and although she knew I did nothing wrong, "it wouldn't look right" if she didn't move me as well as moving my partner.

I charge Respondent with a violation of the DC Human Rights Act of 1977,

** Text is Continued on Attached Sheet(s) **

| | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | Melissa C. Sharpe<br>Notary<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(Month, day and year)* My Commission Expires 12-14-2005 |
| Date          Charging Party *(signature)* | 12-5-05 |

EEOC FORM 5 (Rev. 07/99)

RESPONDENT'S COPY

Dec 05 14:21 2005  CP Initials  Chg # , Attachment Page 1

------------------------------------------------------------------------
Equal Employment Opportunity Commission
Form 5 - Charge of Discrimination, Additional Text
------------------------------------------------------------------------

as amended, and Title VII of the Civil Rights Act of 1964.  I have not
commenced any action, civil criminal or administrative other than the
following:  CROSS FILED WITH THE EEOC.

# Exhibit B

EEOC FORM 131-A (5/01)

# U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| Adrian  Thompson, Chief<br>D C Fire And EMS<br>1018 13th Street, N W<br>3rd Floor<br>Washington, DC 20001 | **Anthony  Bouknight** |

**THIS PERSON** (check one or both)

[X] Claims To Be Aggrieved

[ ] Is Filing on Behalf of Other(s)

EEOC CHARGE NO.
**10C-2006-00065**

FEPA CHARGE NO.
**06-073-DC(CN)**

## NOTICE OF CHARGE OF DISCRIMINATION IN JURISDICTION WHERE A FEP AGENCY WILL INITIALLY PROCESS
(See the enclosed for additional information)

THIS IS NOTICE THAT A CHARGE OF EMPLOYMENT DISCRIMINATION UNDER

[X] Title VII of the Civil Rights Act          [ ] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act          [ ] The Equal Pay Act

HAS BEEN RECEIVED BY

[ ] The EEOC and sent for initial processing to _____

(FEP Agency)

[X] The    **D.C. Office Of Human Rights**                    and sent to EEOC for dual filing purposes.

(FEP Agency)

While EEOC has jurisdiction (upon expiration of any deferral requirement if this is a Title VII or ADA charge) to investigation this charge, EEOC may suspend its investigation and await the issuance of the Agency's final findings and orders. These findings and orders will be given weight by EEOC in making its own determination as to whether reasonable cause exists to believe that discrimination has occurred

You are therefore encouraged to cooperate fully with the Agency. All facts and evidence provided by you to the Agency will be considered by EEOC when it reviews the Agency's final findings and orders. In many cases EEOC will take no further action, thereby avoiding the necessity of an investigation by both the Agency and EEOC.  This likelihood is increased by your active cooperation with the Agency

As a party to the charge, you may request that EEOC review the final findings and orders of the above-named Agency. For such a request to be honored, you must notify EEOC in writing within 15 days of your receipt of the Agency's final decision and order. If the Agency terminates its proceedings without issuing a final finding and order, you will be contacted further by EEOC. Regardless of whether the Agency or EEOC processes the charge, the Recordkeeping and Non-Retaliation provisions of the statutes as explained in the enclosed information sheet apply.

For further correspondence on this matter, please use the charge number(s) shown above.

Enclosure(s):  Copy of Charge

## CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[X] RACE   [ ] COLOR   [ ] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN   [ ] AGE   [ ] DISABILITY   [ ] RETALIATION   [ ] OTHER

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| **Mar 22, 2006** | **Kenneth L. Saunders,<br>Director** | |

OFFICE OF HUMAN RIGHTS

IN THE MATTER OF

Anthony Bouknight,                         :
Complainant,                               :

                    -v-                    :    Docket No. 06-073-DC(CN)
                                           :    EEOC No.: 10CA600065

D.C. Fire and EMS ,                        :
Respondent .                               :

_____

## AMENDMENT

I wish to amend the above captioned complaint to add the charge of race (African-American) discrimination for a suspension that I was subjected to by the Respondent.  In January, I raised as a claim the issue of the proposed suspension, but I was told that it was not a proper claim until I was actually suspended. My original claim moved forward, and then as advised, I was in fact suspended in February.  The written statement of charges I filed with the D.C. Office of Human Rights (the "OHR") on December 5, 2005, makes a claim of discrimination based on my race (African-American).

I believe that the Respondent has discriminated against me based upon my race (African-American), when on January 20, 2006, Respondent notified me that I would be suspended without pay for nine (9) calendar days, effective 0700 hours February 11, 2006, through 0700 hours February 20, 2006.

Therefore, I charge Respondent with race discrimination in violation of the D.C. Human Rights Act of 1977, as amended, and Title VII of the Civil Rights Act of 1964, as amended, for the nine (9) day suspension without pay that it imposed on me.

_____    3-21-06        Charles Teixeira
ANTHONY BOUKNIGHT                          Notary Public, District of Columbia
                                           My Commission Expires 02/28/2011

Subscribed and sworn before me this 21st day of March 2006.

# Exhibit C

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ANTHONY BOUKNIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 06-2118 (RMU) |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA | ) | |
| GOVERNMENT | ) | |
| (FIRE AND EMS DEPARTMENT), | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## AFFIDAVIT OF MIA POWELL LILEY

I, MIA POWELL LILEY, being duly sworn, states that the following is true to the best of my knowledge, information and belief:

1.        I am the Manager, Settlements and Judgments for the Tort Liability Division, District of Columbia Office of Risk Management.  The Tort Liability Division receives, processes and investigates potential claims against the District of Columbia, pursuant to D.C. Official Code § 12-309 (2001 ed.).  The Office of Risk Management commenced to receive potential claims on January 15, 2004.

2.     Receipt of written notice of claims against the District of Columbia, are forwarded directly to the Tort Liability Division for processing.  When the Tort Liability Division receives notices of claims either from the Mayor's Office or directly, the Tort Liability Division records the receipt of such notice in its claims management system.

3.     Claims previously handled by the Claims Unit for the Office of the Attorney General still under investigation as of January 15, 2004, were also transferred to the Office of Risk Management and recorded in its claims management system.

4.    I have conducted a diligent search of the records placed in the Risk Management

system in the DC Office of Risk Management.  The result of this search has revealed that

the Tort Liability Division of the District of Columbia Office of Risk Management has

not received any claim notice from ANTHONY BOUKNIGHT that referred to

allegations that he was discriminated against and/or retaliated against based on his race in

August to October 2005, including any claims of intentional infliction of emotional

distress, negligence, negligent hiring and negligent supervision and/or violations of the

D.C. Human Rights Act.  No further claim notices have been received from or on behalf

of ANTHONY BOUKNIGHT.

MIA POWELL LILEY

DISTRICT OF COLUMBIA, ss:

I, _Susana Suarez_, a Notary Public in and for the District of Columbia,

do hereby certify that MIA POWELL LILEY , whose name is signed to the foregoing

affidavit, bearing the date of the 20 day of February 2007, personally appeared before

me and executed the said release, and acknowledged the same to be her act and deed.

Given under my hand and official seal this 20 day of February 2007.

NOTARY PUBLIC

My Commission Expires: _____

SUSANA SUAREZ
NOTARY PUBLIC OF COLUMBIA
My Commission Expires
August 14, 2010

2

# Exhibit D

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

GEORGE KENNETH MCFARLANE,  :
    Plaintiff,  :
                          :  **Case No. 04-CA-8506**
      v.  :  **Cal. No. 8**
                          :  **Judge Russell F. Canan**
**NEW LEADERS FOR**  :
**NEW SCHOOLS, et al.,**  :
    Defendants.  :

## <u>ORDER</u>

This matter is before the Court on the following motions:

(1)  Defendant New Leaders for New Schools's ("NLNS") Motion to Dismiss Plaintiff's Amended Complaint ("NLNS's Motion to Dismiss"), filed March 1, 2005, plaintiff's opposition thereto, and defendant NLNS's reply;

(2)  Defendant District of Columbia Public Schools's ("DCPS") Motion to Dismiss the Complaint, or in the Alternative, for Summary Judgment ("DCPS's Motion to Dismiss or for Summary Judgment"), filed April 20, 2005, plaintiff's opposition thereto, and defendant DCPS's reply;

(3)  Defendant NLNS's Motion for Sanctions and Costs ("NLNS's Motion for Sanctions"), filed May 27, 2005, and plaintiff's opposition thereto;

(4)  Defendants' Joint Motion for a Protective Order Staying Discovery Pending Resolution of Defendants' Motion to Dismiss ("Defendants' Motion for a Protective Order"), filed June 21, 2005, and plaintiff's opposition thereto; and

(5)  Plaintiff's Motion for Sanctions and Costs Against Defendant NLNS ("Plaintiff's Motion for Sanctions"), filed July 13, 2005; and defendant NLNS's opposition thereto.

## (1)  NLNS's Motion to Dismiss

Plaintiff George Kenneth McFarlane ("McFarlane") was terminated from

the NLNS fellowship program and from employment with the DCPS in November



2003. Plaintiff filed a complaint against NLNS on November 3, 2004 based on his November 2003 termination. The Board of Education of the District of Columbia was also named in the original complaint. Subsequently, plaintiff filed a verified amended complaint, substituting DCPS for the Board of Education on February 2, 2005. It is this verified amended complaint ("Plaintiff's Amended Complaint") that is the subject of NLNS's Motion to Dismiss. In Plaintiff's Amended Complaint, plaintiff asserts the following claims: (1) a public policy tort by NLNS and DCPS; (2) violation by DCPS of the Whistleblower Protection Act, D.C. Code §§ 1-615.51 to1.615.59 (2001); (3) racial discrimination under the District of Columbia Human Rights Act (DCHRA), D.C. Code §§ 2-1401.01 to 2-1403.17 (2001) by NLNS and DCPS; (4) defamation and false light by NLNS; and (5) failure of DCPS to pay all of plaintiff's wages.

NLNS's Motion to Dismiss asserts that plaintiff has failed to state a claim for relief with regard to Count 1 (public policy tort); Count 3 (DCHRA); and Count 4 (defamation and false light). Regarding Counts 1 and 3, defendant argues that plaintiff has failed to state a claim for relief under Superior Court Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), because plaintiff has failed to allege that NLNS was an employer of plaintiff. Regarding Count 4, defendant argues that plaintiff has failed to adequately plead the elements of defamation and false light.

Standard of Review

Dismissal for failure to state a claim under Rule 12(b)(6) is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Owens v. Tiber Island Condominium Ass'n, et al.*, 373 A.2d 890, 893 (D.C. 1977) (citing *Conley v. Gibson*, 355 U.S. 41, 45 (1957)). In the context of a Rule 12(b)(6) motion, the court must view the complaint in the light most favorable to the plaintiff, and plaintiff's allegations must be taken as true. *McBryde v. Amoco Oil Co.*, 404 A.2d 200, 202 (D.C. 1979).

Counts 1 and 3: Public Policy Tort and DCHRA

An employee may bring an action for wrongful discharge in violation of public policy only against a former employer. *Adams v. George W. Cochran & Co., Inc.*, 597 A.3d 28, 34 (D.C. 1991). Likewise, the DCHRA permits claims for discrimination only against employers, employment agencies, and labor organizations. *See* D.C. Code § 2-1402.11(a). Under the DCHRA, an employer is: "any person who, for compensation, employs an individual . . . ; any person acting in the interest of such employer, directly or indirectly; and any professional association." § 2-1401.02. District of Columbia courts apply the following factors in determining whether an employment relationship exists: "(1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, (5) and whether the work is part of the regular business of the employer."

3

*Moorehead v. District of Columbia*, 747 A.2d 138, 143 (D.C. 2000) (citations omitted). The fourth factor, whether the entity has the power to control the servant's conduct, is the most important. *Judah v. Burton Reiner and Morris Mgmt.*, 744 A.2d 1037, 1039 (D.C. 2000). Two distinct entities may be deemed joint employers if they "share or co-determine those matters governing essential terms and conditions of employment." *Dunkin' Donuts Mid-Atlantic Distribution Ctr., Inc. v. NLRB*, 363 F.3d 437, 440 (D.C. Cir. 2004).

First, plaintiff has sufficiently alleged that NLNS participated in selecting and hiring plaintiff. The fact that plaintiff's contract with NLNS provided that DCPS would hire all NLNS fellows in the District of Columbia public schools, Pl's Am. Compl. ¶ 17, tends to show that NLNS participated in the hiring process for DCPS employees, at least with respect to NLNS fellows. Plaintiff also alleged he received a letter from Ms. Jacqueline Davis, Executive Director of NLNS's Washington Office, on July 16, 2003, confirming plaintiff's contract with NLNS and confirming that plaintiff would be employed by DCPS at the rate of $68,000 for the following school year. *Id.* ¶ 21. This letter similarly tends to show NLNS's participation in the hiring process. Plaintiff also avers that NLNS assigned plaintiff to Adelaide Davis Elementary School, against the wishes of that school's principal, with whom plaintiff would be working. *Id.* ¶ 28. This further evidences NLNS's participation in the selection and hiring process.

Second, DCPS paid plaintiff's salary. This factor weighs in favor of NLNS, however, it is not dispositive. Third, plaintiff sets forth several facts

4

tending to show that NLNS possessed the power to terminate plaintiff, through its participation in plaintiff's termination from both entities. Plaintiff claims that Ms. Davis, director of NLNS's District of Columbia office, ordered plaintiff not to return to his former school and took his DCPS identification and keys to the school. *Id.* ¶ 80. If true, this would tend to show NLNS's participation in plaintiff's termination. Further, plaintiff asserts that on November 6, 2003, "Ms. Davis terminated plaintiff's employment with NLNS and the DCPS, effective the same day." Pl.'s Am. Compl. ¶ 71. Ms. Davis then told plaintiff that he could be placed in another DCPS school, if NLNS was pleased with him. *Id.* ¶ 78. NLNS, however, was not pleased with plaintiff and therefore terminated him. *Id.* The fact that NLNS could have placed plaintiff in another DCPS school but chose not to, demonstrates NLNS's participation in plaintiff's termination from DCPS.

Fourth, the Court finds that plaintiff has alleged sufficient indicia of NLNS's power to control plaintiff's conduct. Plaintiff asserts that NLNS (along with DCPS) supervised and evaluated plaintiff. *Id.* ¶ 96. Plaintiff further alleges he attended NLNS weekly meetings and met regularly with his NLNS leadership coach, who in turn met with plaintiff's co-workers at Adelaide Davis Elementary. *Id.* ¶ 34, 46. Plaintiff's allegation that NLNS had the power to transfer him to another school within DCPS, *id.* ¶ 78, further supports plaintiff's argument that NLNS had the power to control plaintiff's conduct.

The fifth factor, whether the work is part of the employer's regular business, weighs in favor of NLNS, because NLNS provides leadership training and guidance, and DCPS runs the District of Columbia public schools. The Court may only grant a motion to dismiss, however, if it appears that no set of facts supporting plaintiff's claim would entitle him to relief. Here, plaintiff has alleged facts that may support plaintiff's claim that NLNS and DCPS were joint employers. As such, the Court shall deny NLNS's Motion to Dismiss with respect to Count 1 (public policy tort) and Count 3 (DCHRA).

<u>Count 4: Defamation and False Light</u>

NLNS argues plaintiff has failed to adequately allege the elements of defamation and false light. Plaintiff bases his complaint for defamation and false light on three events: (1) a November 6, 2003 statement by Ms. Davis to the District of Columbia NLNS fellows that plaintiff had committed a serious offense ("November 6 Statement"); (2) a November 6 e-mail by Ms. Coles, NLNS's National Director of Leadership Coaching, to NLNS fellows in New York and Chicago ("November 6 E-mail"); and (3) a statement by NLNS or Principal Morse to third persons that plaintiff had called African American students "monkeys" and that he had terrified a pre-kindergarten student, made between November 7 and 11, 2003 ("November 7-11 Statements"). The Court shall consider each allegedly defamatory statement in turn.

Defamation requires proof of the following elements:

(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's

6

fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Oparaugo v. Watts*, 2005 D.C. App. LEXIS 501, at * 31 (D.C. Oct. 6, 2005) (citing

*Crowley v. North Am. Telecomms. Ass'n*, 691 A.2d 1169, 1173 n.2 (D.C. 1997).

"[A]n allegedly defamatory remark must be more than unpleasant or offensive; the

language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Howard*

*University v. Best*, 484 A.2d 958, 988 (D.C. 1984) (quoting *Johnson v. Johnson*

*Publishing Co.*, 271 A.2d 696, 697 (D.C. 1970)).  "If it appears that the statements

are at least capable of a defamatory meaning, whether they were defamatory and

false are questions of fact to be resolved by the jury." *Klayman v. Segal*, 783 A.2d

607, 607, 613 (D.C. 2001) (citations omitted).

     To assert a claim for false light, plaintiff must allege: "(1) publicity; (2) about

a false statement, representation, or imputation; (3) understood to be of and

concerning plaintiff; and (4) which places the plaintiff in a false light that would be

[highly] offensive to a reasonable person." *Id.* at 613-14.

<u>November 6 Statement</u>

     Defendant NLNS argues that plaintiff has not sufficiently alleged that any

portion of the statement was false or defamatory.  Plaintiff asserts that Ms. Davis

told the D.C. NLNS fellows that plaintiff had committed a "serious offense." Pl.'s

Am. Compl. ¶ 84.  For the purposes of this motion, the Court assumes this

statement is false, as plaintiff avers there was no good cause for the termination.

*See Klayman*, 783 A.2d at 613 (citation omitted) (assuming, as alleged in the

7

complaint, "the falsity of any express or implied factual statements" made by defendant). The Court concludes this statement may also be defamatory, as it is possible that being accused of a "serious offense" may cause an administrator of an elementary school to appear odious or infamous. NLNS does not contest the remaining factors, therefore, the Court shall deny NLNS's Motion to Dismiss, regarding plaintiff's claim that the November 6 Statement was defamatory. Similarly, the Court shall deny NLNS's Motion to Dismiss plaintiff's false light claim with respect to the November 6 Statement, as it is possible that an accusation of having committed a serious offense would be highly offensive to a reasonable person.

### November 6 E-mail

NLNS argues that the November 6 E-mail contains no false statements. The Court agrees. The November 6 E-mail reads, in pertinent part: "Unfortunately, for both legal reasons and our desire to respect confidentiality, we are not in a position to discuss the details of Ken's removal from the program." Pl.'s Am. Compl. ¶ 84. It is not disputed that plaintiff was removed from NLNS, and it appears that NLNS had previously declined to discuss the details of plaintiff's termination for confidentiality reasons. Pl.'s Am. Compl. ¶ 75. Therefore, plaintiff cannot legitimately rely on the falsity of defendant's e-mail to support his claim for defamation.

Instead, plaintiff relies on defamation by implication, claiming "the email's tone and language (referring to 'legal reasons' and a desire to respect 'confidentiality') implied that Mr. McFarlane had committed a serious offense which could not be

8

explained publicly." Pl.'s Am. Compl. ¶ 86. Defamation by implication is recognized

in the District of Columbia. *See White v. Fraternal Order of Police*, 909 F.2d 512,

518-19 (D.C. Cir. 1990) (stating that under District of Columbia law a true statement

may be capable of a defamatory inference); *Guilford Trans. Indus. v. Wilner*, 760

A.2d 580, 596 (D.C. 2000) (recognizing defamation by implication where defamatory

statements are not expressly stated). Defamation by implication, however, requires

"additional, affirmative evidence suggesting that the defendant *intends* or *endorses*

the defamatory interest" in order for the statement to be deemed defamatory. *White*,

909 F.2d at 520. The *White* Court cautioned: "[i]n entertaining claims of defamation

by implication, courts must be vigilant not to allow an implied defamatory meaning to

be manufactured from words not reasonably capable of sustaining such meaning."

*Id.* at 519; *see also Guilford*, 760 A.2d at 596 (stating that defamation by implication

"requires careful exegesis to ensure that imagined slights do not become the basis

for costly litigation"). Here, the Court concludes there is no evidence that NLNS

intended the email to be perceived in a defamatory manner and that the email is not

reasonably capable of bearing a defamatory meaning. As to plaintiff's false light

claim, the Court concludes that no reasonable person could perceive the November 6

E-Mail as highly offensive. Accordingly, as the e-mail is neither false, defamatory,

nor highly offensive to a reasonable person, the Court shall grant NLNS's Motion to

Dismiss with respect to the November 6 E-mail.

<u>November 7-11 Statements</u>

Defendant argues that plaintiff has failed to state a claim for defamation with respect to the November 7-11 Statements because plaintiff has not alleged it was NLNS who published the statements nor has plaintiff alleged that NLNS made these statements to a specific third party.  Plaintiff's complaint avers: "between November 7 and 11, 2003, NLNS or Principal Morse maliciously fabricated claims that [plaintiff] had called African American students 'monkeys' and that he had terrified a pre-kindergarten student.  NLNS or Principal Morse published these false statements to third persons."  Pl.'s Am. Compl. ¶ 90.

The District of Columbia has not adopted a higher pleading standard for defamation that would specifically require plaintiff to plead the time, place, content, speaker and listener of the allegedly defamatory statement.  *Oparaugo*, 2005 D.C. App. LEXIS 501, at *35.  Instead, the court must look at whether the complaint pleads sufficient facts to permit defendants to adequately respond.  *Id.*  Here, it appears that plaintiff's allegations are sufficient to allow NLNS to form a responsive pleading because plaintiff has alleged that the statements have occurred within a specific time period, and were published by either of two parties to the lawsuit. Further, taking the complaint in the light most favorable to plaintiff, it does not appear beyond a doubt that plaintiff can prove no set of facts allowing recovery.  Should plaintiff fail to name a single person who heard the alleged statement after adequate discovery, summary judgment would be appropriate.  *See Howard University v. Best*, 484 A.2d 958, 989 (D.C. 1984).  At this stage, however, the Court concludes plaintiff

has pled adequate facts to survive a motion to dismiss with respect to the November 7-11 Statements. With respect to plaintiff's false light claim, the Court concludes plaintiff has sufficiently demonstrated publicity. Defendant does not contest the remaining factors. NLNS's Motion to Dismiss shall therefore be denied with respect to the November 7-11 Statements.

**(2) Defendant DCPS's Motion to Dismiss or for Summary Judgment**

In support of its motion, DCPS argues that plaintiff has failed to comply with D.C. Code § 12-309 (2001) and that plaintiff has failed to state a claim under the Whistleblower Protection Act, D.C. Code §§ 1-615.51 to 1.615.59 (2001). In Count 1, plaintiff asserts DCPS wrongfully discharged plaintiff in violation of public policy. In Count 2, plaintiff asserts that DCPS has violated the Whistleblower Protection Act ("WPA"). Count 3 alleges DCPS violated the DCHRA, and in Count 5, plaintiff claims that DCPS failed to pay his final paycheck.

<u>Standard of Review</u>

The applicable standard for a motion to dismiss was discussed earlier with respect to NLNS's Motion to Dismiss. Should the Court consider DCPS's affidavits, the Court must treat DCPS's motion as one for summary judgment. *Herron v. Veneman*, 305 F. Supp.2d 64, 70 (D.D.C. 2004). "To prevail upon a motion for summary judgment, the moving party must clearly demonstrate that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law." *O'Donnell v. Associated General Contractor's of America*, 645 A.2d 1084, 1086 (D.C. 1994) (citations omitted); *see Grant v. May Department Stores Co.*, 786 A.2d

11

580, 583 (D.C. 2001); *Galloway v. Safeway Stores, Inc.*, 632 A.2d 736, 738 (D.C.

1993) ("Summary judgment is appropriate only if there are no genuine issues of

material fact in dispute and if the moving party is entitled to judgment as a matter of

law."); *Young v. Sherwin Williams Co.*, 569 A.2d 1173, 1175 (D.C. 1990); *Holland v.*

*Hannan*, 456 A.2d 807, 814 (D.C. 1983); *Nader v. Toledano*, 408 A.2d 31, 41 (D.C.

1979); Super. Ct. Civ. R. 56(e).

A motion for summary judgment should be granted when "(1) taking all

reasonable inferences in the light most favorable to the non-moving party, (2) a

reasonable juror, acting reasonably, could not find for the non-moving party, (3) under

the appropriate burden of proof." *Galloway*, 632 A.2d at 738 (citing *Nader*, 408 A.2d

at 42). The party moving for summary judgment has the burden of proving an

"absence of material disputed issues and the right to judgment as a matter of law."

*Id.* (citation omitted). Such a burden may be satisfied by demonstrating "that there is

a lack of evidence to support the plaintiff's case." *Id.*

Once a party has set forth a prima facie showing, the burden shifts to the non-

moving party to produce specific evidence demonstrating that a genuine issue of

material fact does exist and that the moving party is not entitled to judgment as a

matter of law. *Spellman v. American Security Bank, N.A.,* 504 A.2d 1119, 1122 (D.C.

1986). "Conclusory allegations by the nonmoving party are insufficient to establish a

genuine issue of fact or to defeat the entry of summary judgment." *O'Donnell*, 645

A.2d at 1086 (quoting *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 198

(D.C. 1991)); *see Boulton v. Inst. of Int'l Educ.*, 808 A.2d 499, 502 (D.C. 2002).

Section 12-309 of the District of Columbia Code sets out mandatory notification requirements that must be followed in order to maintain an action against the District of Columbia for unliquidated damages. D.C. Code § 12-309 (2001). Under § 12-309, a plaintiff must give notice in writing to the Mayor of the time, place, cause and circumstances of the damages within six months of date of injury. *Id.* This requirement can also be fulfilled by a written police report of the incident. *Id.* "Strict compliance with the terms of § 12-309 is 'mandatory as a prerequisite to filing suit against the District.'" *Chidel v. Hubbard*, 840 A.2d 689, 695 (D.C. 2004) (citations omitted). Section 12-309 is strictly construed because it "is in derogation of the common law principle of sovereign immunity." *District of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (D.C. 1995). The purpose of § 12-309 is "(1) to protect the District of Columbia against unreasonable claims and (2) to give reasonable notice to the District of Columbia so that the facts may be ascertained and, if possible, deserving claims adjusted and meritless claims resisted." *Id.*

Here, plaintiff argues that he gave sufficient notice to the D.C. government of plaintiff's claims by writing a letter to DCPS's general counsel. While admitting he did not address his letter to the Mayor, plaintiff asserts he "satisfied the spirit" of § 12-309. Pl.'s Opp. to DCPS's Mot. at 10. Plaintiff's argument is similar to one raised before the Court of Appeals in *Campbell v. District of Columbia*, 568 A.2d 1076, 1077 (D.C. 1990). In *Campbell*, the plaintiff argued that filing and serving a complaint, within the six-month period, on the Mayor "satisfied the intent and spirit of the notice requirement under § 12-309." *Id.* The Court of Appeals disagreed, emphasizing the

13

strict construction of § 12-309. *Id.* In light of § 12-309's strict construction, merely giving notice to DCPS's general counsel is not sufficient. Even if the District received actual notice of the potential claim through DCPS's general counsel, plaintiff's failure to satisfy § 12-309 is fatal. *See Doe v. District of Columbia*, 697 A.2d 23, 29 (D.C. 1997) ("Whether the District had actual notice of Jane Doe's potential claim is not an appropriate consideration under § 12-309."). As plaintiff has failed to give timely, written notice to the Mayor, Ex. 1, Dailey Aff., DCPS's Mot. to Dismiss or for Summ. J., the Court shall grant summary judgment in favor of DCPS with respect to Count 1 (public policy tort).

Plaintiff asserts that the DCHRA does not require compliance with § 12-309. The statute, however, clearly requires written notice to the Mayor, regardless of whether the claim is statutory or based on the common law. *See* § 12-309. It is well-established that a plaintiff with unliquidated statutory claims against the District must satisfy § 12-309, even if the particular statute under which the claim is brought does not specifically require it. *See Doe*, 697 A.2d at 25 (holding that plaintiff failed to satisfy the notice requirements of § 12-309 where plaintiff's claim was based on statutory law, the District of Columbia Prevention of Child Abuse and Neglect Act, D.C. Code §§ 6-2101 *et seq.* (1995), which did not mention § 12-309). Similarly, plaintiff's WPA claim must also fail, as plaintiff has not alleged compliance with § 12-309. The Court shall therefore grant summary judgment in favor of DCPS on Count 3 (DCHRA) and Count 2 (WPA). As such, the Court need not address DCPS's argument that plaintiff failed to establish a cause of action under the WPA.

14

Although DCPS asks the Court to dismiss all of plaintiff's claims, it does not specifically address Count 5, plaintiff's claim for unpaid wages. Plaintiff asserts DCPS did not pay his wages for the September 21, 2003 to October 4, 2003 pay period. The Court assumes plaintiff's salary is not disputed, therefore, plaintiff has a claim for liquidated damages and plaintiff need not give § 12-309 notice with respect to this claim. As such, the Court shall deny defendant's motion to dismiss with respect to Count 5.

### (3) NLNS's Motion for Sanctions

NLNS asks the Court to award sanctions and costs against plaintiff and his counsel, Alan Banov ("Banov") based on Banov's inclusion of the November 6, 2003, e-mail informing Chicago and New York NLNS fellows that plaintiff had been terminated in the Amended Complaint.

"'The central purpose of Rule 11 is to deter baseless filing . . . and thus . . . streamline the administration and procedure of the . . . courts." *Williams et al. v. Bd. Of Trustees of Mount Jezreel Baptist Church, et al.*, 589 A.2d 901, 911 (D.C. 1991) (*quoting Cooter & Gell v. Hartmax Corp.*, 486 U.S. 384, 392 (1990)). The Court notes that excessive motions practice on the issue of sanctions will not serve Rule 11's purpose of streamlining the administration of justice. The Court hereby advises the parties that it strongly disfavors any further filings relating to the issue of sanctions while the case is still ongoing, as the Court fears an inundation with multiple tangential issues will prevent the resolution of this case.

15

Accordingly, the Court declines to rule on a motion for sanctions at this stage in the proceedings, without the benefit of a complete record. The Court shall therefore deny NLNS's Motion for Sanctions without prejudice, with leave to renew after the completion of the case.

**(4) Defendants' Motion for a Protective Order**

Defendants NLNS and DCPS ask the Court to issue a protective order staying discovery pending resolution of Defendants' Motion to Dismiss. As the Court herein resolves all pending motions, Defendants' Motion for a protective order shall be denied as moot.

**(5) Plaintiff's Motion for Sanctions**

Plaintiff's Motion for Sanctions seeks sanctions and costs against NLNS based on the filing of NLNS's Motion for Sanctions. For reasons set forth with respect to NLNS's Motion for Sanctions, the Court declines to rule on the parties' motions for sanctions at this juncture. Thus, Plaintiff's Motion for Sanctions shall be denied without prejudice, with leave to renew after the completion of the case.

Accordingly, it is this __10th__ day of November, 2005,

**ORDERED** that (1) Defendant NLNS's Motion to Dismiss Plaintiff's Amended Complaint shall be **GRANTED IN PART** and **DENIED IN PART**; and it is,

**FURTHER ORDERED** that NLNS's Motion to Dismiss with respect to Count 1 (public policy tort) shall be **DENIED**; and it is

16

**FURTHER ORDERED** that NLNS's Motion to Dismiss with respect to Count 3 (DCHRA) shall be **DENIED**; and it is

**FURTHER ORDERED** that NLNS's Motion to Dismiss with respect to Count 4 (Defamation) shall be **GRANTED IN PART** and **DENIED IN PART**.

**FURTHER ORDERED** that NLNS's Motion to Dismiss with respect to the November 6 Statement shall be **DENIED**; and it is

**FURTHER ORDERED** that NLNS's Motion to Dismiss with respect to the November 6 E-mail shall be **GRANTED**; and it is

**FURTHER ORDERED** that NLNS's Motion to Dismiss with respect to the November 7-11 Statements shall be **DENIED**; and it is

**FURTHER ORDERED** that (2) DCPS's Motion to Dismiss the Complaint, or in the Alternative, for Summary Judgment shall be **GRANTED IN PART** and **DENIED IN PART**; and it is

**FURTHER ORDERED** that DCPS's Motion to Dismiss shall be **GRANTED** with respect to Count 1 (public policy tort), Count 2 (WPA), and Count 3 (DCHRA); and it is

**FURTHER ORDERED** that DCPS's Motion to Dismiss shall be **DENIED** with respect to Count 5 (failure to pay all plaintiff's wages); and it is

17

FURTHER ORDERED that (3) Defendant NLNS's Motion for Sanctions and Costs shall be **DENIED WITHOUT PREJUDICE**; and it is

FURTHER ORDERED that (4) Defendants' Joint Motion for a Protective Order Staying Discovery Pending Resolution of Defendants' Motion to Dismiss shall be **DENIED AS MOOT**; and it is

FURTHER ORDERED that (5) Plaintiff's Motion for Sanctions and Costs Against Defendant NLNS shall be **DENIED WITHOUT PREJUDICE**; and it is

FURTHER ORDERED that the parties shall agree on a proposed scheduling order, which shall be submitted to the Court within 10 days of the docketing of this Order.

**RUSSELL F. CANAN**
**JUDGE**
**(Signed in Chambers)**

Copies to:

Alan Banov
Norberto Salinas
Alan Banov & Associates
1819 L Street, NW
Suite 700
Washington, DC 20036

18

Nicola N. Grey
Office of the Attorney General
441 4th Street, NW
6th Floor South
Washington, DC 20001

Jennifer Gardner Levy
Jamenda Briscoe
Kirkland & Ellis LLP
655 Fifteenth Street, NW
Washington, DC 20005