UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY BOUKNIGHT, :
:
    Plaintiff, : Civil Action No.: 06-2118 (RMU)
:
v. : Document Nos.:  8, 9
:
DISTRICT OF COLUMBIA, :
:
    Defendant. :

### MEMORANDUM OPINION

DENYING WITHOUT PREJUDICE THE DEFENDANT'S
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT;
ORDERING THE PLAINTIFF TO PROVIDE A MORE DEFINITE STATEMENT

### I. INTRODUCTION

This matter comes before the court on the defendant's motion to dismiss or, in the alternative, for summary judgment. The plaintiff, Anthony Bouknight, brings a discrimination and a hostile work environment claim against his employer the District of Columbia, the defendant. Specifically, the plaintiff alleges that the defendant harassed, threatened, transferred and suspended him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* and the D.C. Human Rights Act, D.C. Code §§ 2-1401 *et seq.*[1] Because the plaintiff's complaint is too vague and conclusory to allow the court to thoroughly evaluate the defendant's motion to dismiss, the court converts the motion to one for a more definite statement and orders the plaintiff to provide greater factual specificity in support of his claims. In addition, the court denies the defendant's motion to dismiss the plaintiff's racial discrimination claim based on his

---

[1] The plaintiff acknowledges that he failed to comply with the notice requirement in D.C. Code § 12-309 for claims arising under the D.C. Human Rights Act, D.C. Code §§ 2-1401 *et seq.* Pl.'s Opp'n at 2. He, therefore, voluntarily dismisses these claims, which include retaliation, intentional infliction of emotional distress, negligence, negligent hiring and negligent supervision. *Id.*

transfer because it is unclear whether the transfer adversely affected the plaintiff's earning capacity.

## II.  FACTUAL & PROCEDURAL BACKGROUND

The plaintiff alleges the following facts in support of his claims. The plaintiff, who is African-American, began serving as a paramedic with the D.C. Fire and EMS department in December 1991. Am. Comp. ¶¶ 6-7. On August 6, 2006, the plaintiff and his partner, Matthew Shook, who is Caucasian, responded to a call at 3800 Reservoir Road, N.W., Washington, D.C. *Id.* ¶ 8. The plaintiff drove an ambulance to the scene where Shook proceeded to provide a patient care while the plaintiff assisted the patient's mother into the front passenger seat of the ambulance. *Id.* ¶¶ 10-12. The plaintiff then drove the patient and her mother to the Georgetown University Hospital emergency room. *Id.* ¶ 13. Once they arrived, the plaintiff assisted the patient's mother out of the ambulance while Shook accompanied the patient into the emergency room. *Id.*

On August 22, 2005, the plaintiff's supervisor, Captain Hattie Thompkins, who is African-American, instructed the plaintiff and Shook to report to her office where she informed both men that the mother of the patient they assisted on August 6, 2005 had filed a complaint against them. *Id.* ¶¶ 17-18, 25. The Captain called the plaintiff into her office again on August 30, 2005 and told the plaintiff that no disciplinary action would be taken against him as a result of their discussions at that meeting. *Id.* ¶ 23. Shortly thereafter, Thompkins notified the plaintiff that she would be transferring the plaintiff and Shook to separate units effective September 4, 2005. *Id.* ¶ 24. Approximately one week later, Thompkins told the plaintiff that although he did nothing wrong, she transferred him because he is African-American. *Id.* ¶ 25.

Then, on October 1, 2005, Thompkins recommended that the plaintiff be suspended for being "[i]nefficient; to wit: [n]egligent or careless work performance." *Id*. ¶ 27. And on January 18, 2006, the D.C. Emergency Medical Services Department suspended the plaintiff for nine calendar days effective February 11, 2006 through February 20, 2006. Pl.'s Opp'n, Ex. 7.

In December 2005, the plaintiff filed a D.C. Office of Human Rights ("OHR") Complaint (cross-filed with the Equal Employment Opportunity Commission ("EEOC")) for racial discrimination based on his transfer to another unit. Def.'s Mot., Ex. A ("OHR Compl."). In March 2006, the plaintiff amended his OHR Complaint to include his suspension as an additional ground for racial discrimination. Def.'s Mot. Ex. B ("OHR Am."). The OHR issued a letter of determination on June 13, 2006, rejecting the plaintiff's discrimination claim arising from the transfer, stating that the plaintiff "fail[ed] to establish that he suffered an adverse action, and this failure is fatal to his charge of discrimination." Pl.'s Opp'n, Ex. 9. OHR did, however, determine that probable cause exists to "believe that [the defendant] discriminated against [the plaintiff] on the basis of his race (Black) when it suspended him for nine (9) calendar days." *Id.*

Six months later, the plaintiff filed a complaint in this court alleging discrimination and hostile work environment on account of his race. *See generally* Am. Compl. The plaintiff claims that as a result of this harassment he suffered "embarrassment, humiliation, pain and suffering . . . [and] sustained damages and/or injuries that are permanent in nature." *Id*. ¶ 41. As a result, the plaintiff seeks attorneys' fees, $500,000 in compensatory and punitive damages and declaratory and injunctive relief. *Id.* ¶ 42. On March 5, 2007, the defendant filed a motion to dismiss, or in the alternative for summary judgment. Now fully briefed, the court turns to the defendant's motion.

### III. ANALYSIS

### A. Legal Standard for a 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sonoma N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, the plaintiff must allege a "plausible entitlement to relief," by setting forth "any set of facts consistent with the allegations." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1967, 1969 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-56, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief"). While these facts must "possess enough heft to 'sho[w] that the pleader is entitled to relief,'" a complaint "does not need detailed factual allegations." *Id.* at 1964, 1966. In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61,

64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren*, 353 F.3d at 39; *Browning*, 292 F.3d at 242.

### B. The Plaintiff's Hostile Work Environment Claim

The defendant insists that the plaintiff's alleged acts in support of his hostile work environment claim – his transfer and his suspension – "are patently insufficient to survive a Rule 12(b)(6) challenge." Def.'s Mot. at 11-12. In response, the plaintiff summarily concludes that he "did allege facts regarding a hostile work environment," and that "[a]llegations of the same are acknowledged by the OHR." Pl.'s Opp'n. at 6. It is undisputed that the plaintiff has alleged that he is a member of a protected class, that the defendant took adverse action on account of his race, and that this action materially affected the terms and conditions of his employment. *See generally* Am. Compl. Thus, the defendant's sole point of contention is that the plaintiff has not alleged the type and quantity of incidents necessary to set forth a claim of hostile work

environment.[2]  Def.'s Mot. at 11-12; *see Williams v. Chertoff*, 2005 WL 3200794, at *3 (D.D.C. Nov. 1, 2005) (concluding that the plaintiff alleged "enough incidents of alleged discrimination to set forth a claim of hostile environment").

"Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct. . . . [They] cannot be said to occur on any particular day [but] over a series of days or perhaps years . . . .  [A] single act of harassment may not be actionable on its own."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)) (internal citations and quotations omitted).  Indeed, "except in extreme circumstances, courts have refused to hold that one incident is so severe to constitute a hostile work environment."  *Stanford v. Potomac Elec. Power Co.*, 2006 WL 1722329, at *6 (D.C. Cir. June 21, 2006) (quoting *Stewart v. Evans*, Civ. No. 00-1241, at 6 (D.D.C. Feb. 6, 2001)).  Even when a plaintiff alleges multiple incidents of discrimination, allowing them "to be converted into a contemporaneous hostile work environment claim . . . would significantly blur the distinctions between both the elements that underpin each cause of action and the kinds of harm each cause of action was designed to address."  *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 82 (D.D.C. 2007)

---

[2]  The defendant makes an additional argument that the hostile work environment claim should be dismissed because the plaintiff failed to exhaust his administrative remedies.  Def.'s Mot. at 12.  Title VII suits are "limited in scope to claims that are 'like or reasonably related to the allegations of the [OHR] charge and grow[s] out of such allegations.'"  *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (quoting *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)).  The plaintiff's OHR Complaint and Amendment recite allegations of racial discrimination based on the plaintiff's transfer and nine-day suspension respectively.  OHR Compl.; OHR Am.  Because the alleged discriminatory conduct the plaintiff uses as the foundation for his hostile work environment claim is the same conduct the plaintiff included in his complaints before the OHR, the plaintiff has adequately exhausted his administrative remedies.  *Compare* Am. Compl. ¶¶ 17-28 (alleging that his transfer and suspension were due to his race) *and* OHR Compl. *and* OHR Am. (same); *Nurridin v. Goldin*, 382 F. Supp. 2d 79, 106 n.10 (D.D.C. 2005) (observing that exhaustion of administrative remedies for hostile work environment claims is less stringent than for discrete claims of discrimination or retaliation, in that a plaintiff "need only have filed an EEOC complaint alleging some of the claims that comprise the hostile work environment claim").

(quoting *Parker v. State Dep't of Pub. Safety*, 11 F. Supp. 2d 467, 475 (D. Del. 1998)). A hostile work environment claim, for example, "must be based on 'one unlawful employment practice' of pervasive, insulting, discriminatory conduct that makes the plaintiff's day-to-day work environment severely 'abusive.'" *Id.* (quoting *Morgan*, 536 U.S. at 117).

In this case, the plaintiff's claim rests on his transfer, suspension and yet unspecified incidents of "harassment" and "threat[s of] other disciplinary action." Am. Compl. ¶ 40. Because these additional incidents of "harassment" and "threat[s]" are too vague and conclusory for the court to thoroughly address the defendant's motion, the court treats the motion to dismiss as a motion for more definite statement under Federal Rule of Civil Procedure 12(e), *Powers-Bunce v. District of Columbia*, 479 F. Supp. 2d 146, 158-59 (D.D.C. 2007), and accordingly, orders the plaintiff to provide specific factual support for these alleged events. Once the plaintiff has filed such support, the defendant may re-file its motion to dismiss.

### C. The Plaintiff's Transfer

The defendant next alleges that the plaintiff's discrimination claim under Title VII based on his transfer to another medic unit fails because "it is a lateral transfer and is not an adverse employment action." Def.'s Mot. at 9. The plaintiff responds that the transfer "caused a great amount of stress and inconvenience because the shift change upset the family schedule" and "affected overtime potential." Pl.'s Opp'n at 9, 11. Although a plaintiff does not need to set forth a prima facie case to survive a motion to dismiss, the court may "probe whether the plaintiff can ever meet [t]his initial burden." *Rochon v. Ashcroft*, 310 F. Supp. 2d 23, 29 (D.D.C. 2004). Courts are able to make such an inquiry because some "litigants may plead themselves out of court by alleging facts that establish defendants' entitlement to prevail." *Id.* Here, however, the plaintiff has not pled himself out of court.

The complaint states that the plaintiff and his partner, Shook, "were being transferred from their assignment on Medic 1 and were sent to separate units." Am. Compl. ¶ 24. The defendant characterizes this as a "lateral transfer," Def.'s Mot. at 9, but the plaintiff retorts that the transfer "affected overtime potential," Pl.'s Opp'n at 11. Although it is well settled that lateral transfers do not constitute adverse employment action, a diminution in pay or benefits is the type of objective harm that qualifies as an adverse employment action. *See Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002); *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999) (holding that a "plaintiff who is made to undertake or who is denied a lateral transfer – that is, one in which she suffers no diminution in pay or benefits – does not suffer an actionable injury unless there are some other materially adverse consequences"). Because the complaint is silent as to the nature of the transfer, and because the plaintiff now contends that the transfer adversely affected his earning capacity, the court denies the defendant's motion to dismiss.[3]

---

[3] The defendant also argues that the court should grant its motion for summary judgment as to the plaintiff's discrimination and hostile work environment claims. Def.'s Mot. at 9-10. Given the dearth of evidence before the court, it is too early to resolve the defendant's motion for summary judgment. *Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1997) (recognizing that "summary judgment ordinarily is proper only after the plaintiff has been given adequate time for discovery" (internal quotations omitted)); *Chandler v. Bernanke*, 2008 WL 238953, at *6 (D.D.C. Jan. 30, 2008) (stating that "[s]ummary judgment is premised on the notion that parties will have had 'adequate time for discovery' to establish whether a genuine issue of material facts exists" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986))).

## VI.  CONCLUSION

For the foregoing reasons, the court denies without prejudice the defendant's motion to dismiss or for summary judgment and orders the plaintiff to articulate his allegations of "harassment" and "threat[s]" with greater specificity.  An order consistent with this Memorandum Opinion is issued this 10th day of March, 2008.

RICARDO M. URBINA
United States District Judge
