## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### Civil Division

| | |
|---|---|
| **ANTHONY BOUKNIGHT** )<br>**1618 Winesapp Drive** )<br>**Odenton, Maryland 21113** )<br> )<br>**Plaintiff,** )<br> )<br>**v.** )<br> )<br>**DISTRICT OF COLUMBIA GOVERNMENT** )<br>**(D.C. FIRE AND EMS DEPARTMENT)** )<br> )<br>**Serve: Honorable Anthony Williams,** )<br>    **or designated representative** )<br>    **District of Columbia Government** )<br>    **1350 Pennsylvania Avenue N.W.** )<br>    **Washington, D.C. 20004** )<br> )<br>**Serve: Office of the Attorney General** )<br>    **for the District of Columbia** )<br>    **441 4th Street N.W. 6th Floor South** )<br>    **Washington, D.C. 20001** )<br> )<br> )<br>    **Defendant.** ) | **Case No.: 1:06-cv-2118**<br>**Judge Urbina** |

## SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**COMES NOW,** the Plaintiff, Anthony Bouknight, by and through his attorney, Donna Williams Rucker, Esquire and DUBOFF AND ASSOCIATES CHARTERED, and files suit against the District of Columbia Government, Fire and EMS Department, and for cause of action states as follows:

## JURISDICTION AND VENUE

1.    Jurisdiction of the Court is proper pursuant 42 U.S.C. §§ 2000(e) et seq., §1981 of the Civil Rights Act, and Title VII of the Civil Rights Act of 1964, and the District of Columbia Human Rights Act of 1977.

2.      Venue is appropriate and based on the fact that the actions complained of are the result of actions and employment practices of Defendant occurring within the District of Columbia.

3.      Plaintiff Anthony Bouknight ("Bouknight") has exhausted his administrative remedies and timely files this action pursuant to the right to sue letter attached as Exhibit A.

4.      Plaintiff brings this action for discrimination on the basis of race (African-American).

## FACTS

5.      Plaintiff incorporates all information and allegations contained in the foregoing paragraphs as if fully set forth herein.

6.      Plaintiff was hired by the Defendant as a Paramedic in December of 1991.

7.      Plaintiff at all relevant times was a Paramedic employed by the Defendant.

8.      On August 6, 2006, Plaintiff and his partner, Paramedic Matthew Shook, were dispatched to 3800 Reservoir Road, N.W., Washington, D.C. with the event type "Conscious with Abnormal Breathing."

9.      Upon arriving at the scene, an engine company, turned care of the patient over to the Plaintiff and his partner, Paramedic Shook.

10.     On the date of the incident Paramedic Shook was in charge of patient care while Plaintiff Bouknight was the driver of the medic unit.

11.     Plaintiff assisted the patient's mother into the front passenger seat.

12.     Plaintiff checked with Paramedic Shook, who was in the back of the unit supposedly working on the patient obtaining vitals, and Shook indicated that he was okay with the patient and that they could proceed to the emergency room.

13.    Plaintiff transported the patient and her mother to the emergency room at Georgetown University Hospital.  Plaintiff exited the unit and assisted the patient's mother in getting out of the unit.  By the time Plaintiff made his way around to the back of the unit, he saw that Paramedic Shook had the patient and was already entering the emergency room doors.

14.    Paramedic Shook entered the Emergency Room with the patient and Plaintiff went into the back of the unit and prepared it for the next patient.

15.    Once Paramedic Shook returned to the unit Plaintiff proceeded back in service.

16.    When Plaintiff and Paramedic Shook returned to the firehouse Plaintiff observed Paramedic Shook make the required journal entry regarding their run.

17.    On August 22, 2005 Plaintiff and Paramedic Shook were instructed to report to their Captain's office, Captain Hattie Thompkins.

18.    Once arriving at the Captain's office on August 22, 2005 Plaintiff and Paramedic Shook were shown a complaint letter ("Letter") from the patient's mother regarding the August 6, 2005 run to Georgetown University Hospital ("Run").

19.    Plaintiff provided a special report to the allegations made in the Letter as instructed by Captain Thompkins in the August 22, 2005 meeting.

20.    On August 30, 2006 Captain Thompkins ordered Plaintiff to report to her office to discuss the August 6, 2005 Run .

21.    Plaintiff requested that a Union Representative be present and the meeting was rescheduled.

22.    When Plaintiff was again called to the Captain's office on August 30, 2005, Plaintiff asked where the Union Representative was and he was told by Captain Thompkins and another supervisor that they just wanted to talk about the August 6, 2005 Run and he really did

not need a Union Representative.

23.    Plaintiff was informed that no disciplinary action would be taken as a result of anything discussed on August 30, 2005.

24.    Immediately after the discussion on August 30, 2005 Plaintiff was informed that effective September 4, 2005 he and his partner, Paramedic Shook were being transferred from their assignment on Medic 1 and were being sent to separate units.

25.    Approximately one week later, Captain Thompkins informed Plaintiff that he had been transferred because he is Black and she, the Captain, is Black and that Paramedic Shook is White and that although Plaintiff had done nothing wrong, he was being transferred because he is Black.

26.    Plaintiff objected to being singled out solely because of his race and he requested that no action be taken against him because he had done nothing wrong.

27.    On October 1, 2005, Captain Thompkins recommended that Plaintiff be suspended from work for "Inefficient; to wit: Negligent or careless work performance."

28.    Plaintiff was subsequently suspended for nine calendar days, and threatened with other disciplinary action.

29.    On or about March 31, 2006 Lieutenant Mike Baker, ordered Plaintiff to violate protocol and transport a patient to a Maryland hospital.  Plaintiff questioned the order and was told by Lieutenant Baker do it  "[b]ecause I said so d**n it."

30.    Lt. Baker then charged Plaintiff with insubordination and recommended a 30-day suspension without pay and non-public contact.

31.    Plaintiff challenged this action as harassment and asked for an investigation. After the investigation, Plaintiff was cleared and the charge of insubordination was dropped.

32.    On or about May 2, 2006 Plaintiff was in the Training Academy parking lot when Lt. Baker stated something to the effect of "you may think its over but I'm going to get your Black A-s out of here."

33.    Plaintiff reported the May 2, 2006 incident stating in his memorandum which was addressed to Fire Chief Adrian Thompson "I have had repeated run ins (sic) with this individual [Lt. Baker] who has constantly harrased (sic) me and appearars (sic) determined to get me fired from my position as a Paramedic".

34.    Chief Jerome Stack told plaintiff that because there were no witnesses to the May 2, 2006 incident there was nothing that could be done and Chief Stack refused to forward the complaint of harassment up the chain of command thus denying Plaintiff the rights his co-workers enjoyed.

35.    Upon information and belief, the Defendant has taken no disciplinary action against Lt. Baker for the May 2, 2006 incident.

36.    On or about October 11, 2006, Chief Stack recommended that Plaintiff receive a 15-day suspension for allegedly violating protocol in intentionally taking a delayed route to a call on July 10, 2006.

37.    Plaintiff was not driving at the time of the July 10, 2006 call at issue.

38.    Plaintiff was given 15 days off without pay effective January 25, 2007, for the July 10, 2006 alleged incident.  Plaintiff is currently appealing this suspension.

39.    Plaintiff's partner on July 10, 2006, Firefighter Lamont Veney who had been with the department for the same time as the Plaintiff, received only a 3-day suspension for the same alleged violation when he was the driver of the ambulance during the time Defendant alleged that a delayed roué was used.

40.     On July 17, 2006 Plaintiff was asked to type a special report about the July 10, 2006 incident; Plaintiff requested a copy of the incident report prior to filing a special report.

41.     On July 19, 2006 Plaintiff was informed that his mother had been involved in an automobile crash and subsequently died from her injuries.  Plaintiff was on leave for several weeks and did not receive the requested incident report.

42.     Plaintiff returned to work on or about August 20, 2006 and was ordered to type the special report or be charged with insubordination.  Not having received the incident report and facing insubordination charges Plaintiff filed a special report.

43.     Plaintiff has been repeatedly denied access to his personnel file by Captain Hattie Thompkins.

44.     Plaintiff has, in 2008, received correspondence from the Defendant threatening to place him on sick leave restriction for 2008 for excessive use of sick leave.  However, Plaintiff had not used any sick leave in 2008 prior to the issuance of that letter.

45.     Upon information and belief, Deputy Chief Blalock is the final authority in the EMS chain of command.  Deputy Chief Blalock has now twice suspended the Plaintiff for actions, upon information and belief, not attributable to the Plaintiff.

46.     On or about December 1, 2006 Deputy Chief Blalock informed Plaintiff "your career with the Fire Department is over and you should look for a different place to work."

**COUNT I**
**DISCRIMINATION**
**(Race)**

47.     Plaintiff incorporates all information and allegations contained in the foregoing paragraphs as if fully set forth herein.

48.     Plaintiff is African-American, and is a member of a protected group under Title VII of the Civil Rights Act of 1964, as amended.

49.     Plaintiff performed his job duties satisfactorily.

50.     Plaintiff was nonetheless subjected to adverse employment action, including being suspended and threatened with suspension and leave restriction, denied access to his file, and verbally harassed by superiors.

51.     The adverse employment actions plaintiff was subject to were taken solely because of his race, and further caused plaintiff to experience harassment.

52.     Plaintiff's race played a motivating role and/or contributed to defendant's decision to take the actions taken against plaintiff.

53.      Plaintiff has been discriminated against based upon his race; he was singled out and disciplined solely because of his race.  Plaintiff has been treated differently and subjected to different terms and/or conditions of employment as well as a hostile work environment, due to his race.

54.     The Defendant is responsible for the actions of its employees, including Captain Thompkins, Chief Jerome Stack, and Lieutenant Mike Baker under the doctrine of *Respondeat Superior*.

55.     Defendant has failed to address a pattern and practice of discrimination in the work place that Plaintiff has been subjected to.

56.     Plaintiff has received differential treatment, has been subjected to adverse employment actions and disparaging treatment from his supervisors based on his race.

57.     Plaintiff has been subjected to harassment and adverse employment action. Specifically he was suspended, threatened with suspensions, verbally harassed by his superiors, been denied access to his personnel file and he has been threatened with other disciplinary actions to include suspensions and sick leave restrictions.

58.    Due to the adverse treatment, and the hostile work environment Plaintiff has been subjected to, he has suffered, embarrassment, humiliation, pain and suffering, including emotional distress.  Plaintiff has sustained damages and/or injuries that are permanent in nature.

59.    Plaintiff has also incurred lost wages, medical bills and costs, and other related expenses.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.    Award compensatory and punitive damages in excess of Five Hundred Thousand Dollars ($500,000.00);

b.    Award, pursuant to 42 U.S.C. Section 2000(e)-(5)(k), reasonable attorney's fees and costs incurred and for this action; and

c.    Equitable, Declaratory and injunctive relief;

d.    Award such other and further relief as this Court deems just and proper.

### COUNT II
### (Equitable Relief )

60.    The allegations contained in paragraphs 1 through 59 are incorporated herein by reference as if fully pleaded herein.

61.    Plaintiff seeks to have the Fire & EMS Department cease and desist all discriminatory practices;

62.    Plaintiff seeks to have removed from his personal, and other files maintained by defendant, any negative information and/or disciplinary action taken against plaintiff as a result of the actions complained of herein.

63.    Plaintiff seeks to have the defendant take all disciplinary action required by its rules, policies and procedures against all responsible management officials.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.    Award compensatory and punitive damages in excess of Five Hundred Thousand Dollars ($500,000.00);

b.    Award, pursuant to 42 U.S.C. Section 2000(e)-(5)(k), reasonable attorney's fees and costs incurred and for this action; and

c.    Equitable, Declaratory and injunctive relief;

d.    Award such other and further relief as this Court deems just and proper.


Respectfully submitted,


By:    _/s/ *Donna Williams Rucker*_____
Donna Williams Rucker, Esquire
DuBoff & Associates, Chartered
8401 Colesville Road, Suite 501
Silver Spring, Maryland 20910
(301) 495-3131    Office
(301) 587-1872    Facsimile


## JURY DEMAND

Plaintiff requests a jury trial on all issues in this case.


_/s/ *Donna Williams Rucker*_____
Donna Williams Rucker

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | | |
|---|---|---|
| **ANTHONY BOUKNIGHT** | ) | |
| **1618 Winesapp Drive** | ) | |
| **Odenton, Maryland 21113** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.: 1:06-cv-2118** |
| **v.** | ) | **Judge Urbina** |
| | ) | |
| **DISTRICT OF COLUMBIA GOVERNMENT** | ) | |
| **(D.C. FIRE AND EMS DEPARTMENT)** | ) | |
| | ) | |
| **Serve: Honorable Anthony Williams,** | ) | |
| **or designated representative** | ) | |
| **District of Columbia Government** | ) | |
| **1350 Pennsylvania Avenue N.W.** | ) | |
| **Washington, D.C. 20004** | ) | |
| | ) | |
| **Serve: Office of the Attorney General** | ) | |
| **for the District of Columbia** | ) | |
| **441 4th Street N.W. 6th Floor South** | ) | |
| **Washington, D.C. 20001** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

    **COMES NOW,** the Plaintiff, Anthony Bouknight, by and through his attorney, Donna Williams Rucker, Esquire and DUBOFF AND ASSOCIATES CHARTERED, and files suit against the District of Columbia Government, Fire and EMS Department, and for cause of action states as follows:

**JURISDICTION AND VENUE**

    1.    Jurisdiction of the Court is proper pursuant 42 U.S.C. §§ 2000(e) et seq., §1981 of the Civil Rights Act, and Title VII of the Civil Rights Act of 1964, and the District of Columbia Human Rights Act of 1977.

2.      Venue is appropriate and based on the fact that the actions complained of are the result of actions and employment practices of Defendant occurring within the District of Columbia.

3.      Plaintiff Anthony Bouknight ("Bouknight") has exhausted his administrative remedies and timely files this action pursuant to the right to sue letter attached as Exhibit A.

4.      Plaintiff brings this action for discrimination on the basis of race (African-American).

## FACTS

5.      Plaintiff incorporates all information and allegations contained in the foregoing paragraphs as if fully set forth herein.

6.      Plaintiff was hired by the Defendant as a Paramedic in December of 1991.

7.      Plaintiff at all relevant times was a Paramedic employed by the Defendant.

8.      On August 6, 2006, Plaintiff and his partner, Paramedic Matthew Shook, were dispatched to 3800 Reservoir Road, N.W., Washington, D.C. with the event type "Conscious with Abnormal Breathing."

9.      Upon arriving at the scene, an engine company, turned care of the patient over to the Plaintiff and his partner, Paramedic Shook.

10.     On the date of the incident Paramedic Shook was in charge of patient care while Plaintiff Bouknight was the driver of the medic unit.

11.     Plaintiff assisted the patient's mother into the front passenger seat.

12.     Plaintiff checked with Paramedic Shook, who was in the back of the unit supposedly working on the patient obtaining vitals, and Shook indicated that he was okay with the patient and that they could proceed to the emergency room.

13.     Plaintiff transported the patient and her mother to the emergency room at Georgetown University Hospital.  Plaintiff exited the unit and assisted the patient's mother in getting out of the unit.  By the time Plaintiff made his way around to the back of the unit, he saw that Paramedic Shook had the patient and was already entering the emergency room doors.

14.     Paramedic Shook entered the Emergency Room with the patient and Plaintiff went into the back of the unit and prepared it for the next patient.

15.     Once Paramedic Shook returned to the unit Plaintiff proceeded back in service.

16.     When Plaintiff and Paramedic Shook returned to the firehouse Plaintiff observed Paramedic Shook make the required journal entry regarding their run.

17.     On August 22, 2005 Plaintiff and Paramedic Shook were instructed to report to their Captain's office, Captain Hattie Thompkins.

18.     Once arriving at the Captain's office on August 22, 2005 Plaintiff and Paramedic Shook were shown a complaint letter ("Letter") from the patient's mother regarding the August 6, 2005 run to Georgetown University Hospital ("Run").

19.     Plaintiff provided a special report to the allegations made in the Letter as instructed by Captain Thompkins in the August 22, 2005 meeting.

20.     On August 30, 2006 Captain Thompkins ordered Plaintiff to report to her office to discuss the August 6, 2005 Run .

21.     Plaintiff requested that a Union Representative be present and the meeting was rescheduled.

22.     When Plaintiff was again called to the Captain's office on August 30, 2005, Plaintiff asked where the Union Representative was and he was told by Captain Thompkins and another supervisor that they just wanted to talk about the August 6, 2005 Run and he really did

not need a Union Representative.

23.     Plaintiff was informed that no disciplinary action would be taken as a result of anything discussed on August 30, 2005.

24.     Immediately after the discussion on August 30, 2005 Plaintiff was informed that effective September 4, 2005 he and his partner, Paramedic Shook were being transferred from their assignment on Medic 1 and were being sent to separate units.

25.     Approximately one week later, Captain Thompkins informed Plaintiff that he had been transferred because he is Black and ~~she ,the~~she, the Captain, is Black and that Paramedic Shook is White and that although Plaintiff had done nothing wrong, he was being transferred because he is Black.

26.     Plaintiff objected to being singled out solely because of his race and he requested that no action be taken against him because he had done nothing wrong.

27.     On October 1, 2005, Captain Thompkins recommended that Plaintiff be suspended from work for "Inefficient; to wit: Negligent or careless work performance."

28.     Plaintiff was subsequently suspended for nine calendar days, and threatened with other disciplinary action.

29.     On or about March 31, 2006 Lieutenant Mike Baker, ordered Plaintiff to violate protocol and transport a patient to a Maryland hospital.  Plaintiff questioned the order and was told by Lieutenant Baker do it  "[b]ecause I said so d**n it."

30.     Lt. Baker then charged Plaintiff with insubordination and recommended a 30-day suspension without pay and non-public contact.

31.     Plaintiff challenged this action as harassment and asked for an investigation. After the investigation, Plaintiff was cleared and the charge of insubordination was dropped.

32.     On or about May 2, 2006 Plaintiff was in the Training Academy parking lot when Lt. Baker stated something to the effect of "you may think its over but I'm going to get your Black A-s out of here."

33.     Plaintiff reported the May 2, 2006 incident stating in his memorandum which was addressed to Fire Chief Adrian Thompson "I have had repeated run ins (sic) with this individual [Lt. Baker] who has constantly harrased (sic) me and appearars (sic) determined to get me fired from my position as a Paramedic".

34.     Chief Jerome Stack told plaintiff that because there were no witnesses to the May 2, 2006 incident there was nothing that could be done and Chief Stack refused to forward the complaint of harassment up the chain of command thus denying Plaintiff the rights his co-workers enjoyed.

35.     Upon information and belief, the Defendant has taken no disciplinary action against Lt. Baker for the May 2, 2006 incident.

36.     On or about October 11, 2006, Chief Stack recommended that Plaintiff receive a 15-day suspension for allegedly violating protocol in intentionally taking a delayed route to a call on July 10, 2006.

37.     Plaintiff was not driving at the time of the July 10, 2006 call at issue.

38.     Plaintiff was given 15 days off without pay effective January 25, 2007, for the July 10, 2006 alleged incident.  Plaintiff is currently appealing this suspension.

39.     Plaintiff's partner on July 10, 2006, Firefighter Lamont Veney who had been with the department for the same time as the Plaintiff, received only a 3-day suspension for the same alleged violation when he was the driver of the ambulance during the time Defendant alleged that a delayed roué was used.

40.     On July 17, 2006 Plaintiff was asked to type a special report about the July 10, 2006 incident; Plaintiff requested a copy of the incident report prior to filing a special report.

41.     On July 19, 2006 Plaintiff was informed that his mother had been involved in an automobile crash and subsequently died from her injuries.  Plaintiff was on leave for several weeks and did not receive the requested incident report.

42.     Plaintiff returned to work on or about August 20, 2006 and was ordered to type the special report or be charged with insubordination.  Not having received the incident report and facing insubordination charges Plaintiff filed a special report.

43.     Plaintiff has been repeatedly denied access to his personnel file by Captain Hattie Thompkins.

44.     Plaintiff has, in 2008, received correspondence from the Defendant threatening to place him on sick leave restriction for 2008 for excessive use of sick leave.  However, Plaintiff had not used any sick leave in 2008 prior to the issuance of that letter.

45.     Upon information and belief, Deputy Chief Blalock is the final authority in the EMS chain of command.  Deputy Chief Blalock has now twice suspended the Plaintiff for actions, upon information and belief, not attributable to the Plaintiff.

46.     On or about December 1, 2006 Deputy Chief Blalock informed Plaintiff "your career with the Fire Department is over and you should look for a different place to work."

**COUNT I**
**DISCRIMINATION**
**(Race ~~and Reprisal~~ )**

47.     Plaintiff incorporates all information and allegations contained in the foregoing paragraphs as if fully set forth herein.

6

48.     Plaintiff is African-American, and is a member of a protected group under Title VII of the Civil Rights Act of 1964, as amended.

49.     Plaintiff performed his job duties satisfactorily.

~~32.~~50.   Plaintiff was nonetheless subjected to adverse employment action, including being suspended ~~for nine (9) days.~~and threatened with suspension and leave restriction, denied access to his file, and verbally harassed by superiors.

51.     The adverse employment actions plaintiff was subject to were taken solely because of his race, and further caused plaintiff to experience harassment.

~~34.Plaintiff has also been harassed and subjected to acts of reprisal, that have had an adverse effect on plaintiff, for filing an EEO complaint.~~

~~36.~~52.   Plaintiff's race played a motivating role and/or contributed to defendant's decision to take the action~~s~~ taken against plaintiff.

~~36.~~53.   Plaintiff has been discriminated against based upon his race ~~and reprisal~~; he was singled out and disciplined solely because of his race.  Plaintiff has been treated differently and subjected to different terms and/or conditions of employment as well as a hostile work environment,~~and reprisal~~ due to his race.

54.     The Defendant is responsible for the actions of its employees, including Captain Thompkins, Chief Jerome Stack, and Lieutenant Mike Baker under the doctrine of *Respondeat Superior*.

55.     Defendant has failed to address a pattern and practice of discrimination in the work place that Plaintiff has been subjected to.

~~39.~~56.   Plaintiff has received differential treatment, has been subjected to adverse employment actions and disparaging treatment from his supervisors based on his race ~~and in reprisal for filing an EEO complaint~~.

~~40.~~Plaintiff has been subjected to harassment and adverse employment action. Specifically he was ~~suspended for nine days,~~suspended, threatened with suspensions, verbally

harassed by his superiors, been denied access to his personnel file and he has been threatened with other disciplinary ~~action, and suspensions.~~

57.    actions to include suspensions and sick leave restrictions.

58.    Due to the adverse treatment, and the hostile work environment Plaintiff has been subjected to, he has suffered, embarrassment, humiliation, pain and suffering, including emotional distress.  Plaintiff has sustained damages and/or injuries that are permanent in nature.

59.    Plaintiff has also incurred lost wages, medical bills and costs, and other related expenses.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.    Award compensatory and punitive damages in excess of Five Hundred Thousand Dollars ($500,000.00);

b.    Award, pursuant to 42 U.S.C. Section 2000(e)-(5)(k), reasonable attorney's fees and costs incurred and for this action; and

c.    Equitable, Declaratory and injunctive relief;

d.    Award such other and further relief as this Court deems just and proper.

## <u>COUNT II</u>
~~(Intentional Infliction of Emotional Distress~~(Equitable Relief )

~~43.~~60.  ~~Plaintiff incorporates all information and~~The allegations contained in ~~the foregoing paragraphs as if fully set forth~~paragraphs 1 through 59 are incorporated herein by reference as if fully pleaded herein.

~~44.The actions of the Defendant by and through its employees were extreme and outrageous conduct.~~

~~45.Defendant by and through its employees committed the discrimination intentionally and caused Plaintiff severe emotional distress and embarrassment.~~

46.Defendant by and through its employees should have known that their behavior would have the probable consequences of causing Plaintiff severe emotional and psychological distress.

47.61.  Defendant's actions did in fact cause Plaintiff great emotional and psychological distress, humiliation, embarrassment and pain and suffering.  Plaintiff was required to seek medical assistance, care and treatment.Plaintiff seeks to have the Fire & EMS Department cease and desist all discriminatory practices;

62.    Plaintiff seeks to have removed from his personal, and other files maintained by defendant, any negative information and/or disciplinary action taken against plaintiff as a result of the actions complained of herein.

63.    Plaintiff seeks to have the defendant take all disciplinary action required by its rules, policies and procedures against all responsible management officials.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.    Award compensatory and punitive damages in excess of Five Hundred Thousand Dollars ($500,000.00);

b.    Award, pursuant to 42 U.S.C. Section 2000(e)-(5)(k), reasonable attorney's fees and costs incurred and for this action; and

c.    c.    Equitable, Declaratory and injunctive relief;

d.    Award such other and further relief as this Court deems just and proper.

## COUNT III
### (Negligence )

48. Plaintiff incorporates all information and allegations contained in the foregoing paragraphs as if fully set forth herein.

49. Defendant owed Plaintiff the duty to allow him to work in an environment free of discrimination, and a hostile work environment.

50. As a result of the Defendants negligence, the Plaintiff, has in the past and will in the future experience, pain and suffering, humiliation, embarrassment, emotional distress, and mental anguish.

51. The Defendant was negligent, by and through its employees, in that it breached the applicable standard of care owed to Plaintiff.

52. The above negligent acts and/or omissions by Captain Thompkins, directly and proximately caused significant injuries and losses, economic and non-economic, to the Plaintiff.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a.    Award compensatory and punitive damages in excess of Five Hundred Thousand Dollars ($500,000.00);

b.    Award, pursuant to 42 U.S.C. Section 2000(e) (5)(k), reasonable attorney's fees and costs incurred and for this action; and

c. Equitable, Declaratory and injunctive relief;

d. Award such other and further relief as this Court deems just and proper.

## COUNT IV
### (Negligent Hiring and Negligent Supervision)

53. Plaintiff incorporates all information and allegations contained in the foregoing paragraphs as if fully set forth herein.

10

54. At all times relevant to the instant action, Captain Thompkins was an employee of this Defendant and at the time of the occurrence, was acting within the course and scope of her employment.

55. Defendant knew or should have known that responsible employees, including Captain Thompkins, were not adequately fit for hire for the duties they were to carry out and that in the course of their promotions within the Fire and EMS Department that there was behavior that indicted that their work and actions should be properly supervised.

56. Defendant knew or should have known that Captain Thompkins required supervision at the times and based on the circumstances relevant to this case and defendant failed to provide said supervision.

57. Defendant knew or should have known at the time of hiring Captain Thompkins and/or after observing her in the performance of her duties, that she was unfit to fulfill the duties and obligations of her position, and that she would not take proper measures regarding the performance of her duties and obligations of her job as required by the rules, policies and procedures then in effect.

58. Defendant had a duty to refrain from hiring Captain Thompkins and/or to properly supervise Captain Thompkins in the performance of the duties and obligations required of her job, and to not retain Captain Thompkins when her performance revealed that she was not properly performing her duties.

59. As a direct and proximate result of the negligence of the Defendant by and through its employees, plaintiff suffered pain and injuries, mental anguish, has incurred other related costs, without any negligence whatsoever contributing thereto on the part of the Plaintiff.

60. As employer and/or principal of Captain Thompkins, Defendant under the doctrine of *Respondeat Superior*, is responsible for the negligent acts its employees perform in the course and scope of their employment.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

a.    Award compensatory and punitive damages in excess of Five Hundred Thousand Dollars ($500,000.00);

b.    Award, pursuant to 42 U.S.C. Section 2000(e)-(5)(k), reasonable attorney's fees and costs incurred and for this action; and

c. Equitable, Declaratory and injunctive relief;

d. Award such other and further relief as this Court deems just and proper.

**COUNT V**
**(Equitable Relief )**

61. The allegations contained in paragraphs 1 through 60 are incorporated herein by reference as if fully pleaded herein.

62. Plaintiff seeks to have the Fire & EMS Department cease and desist all discriminatory practices;

63. Plaintiff seeks to have removed from his personal, and other files maintained by defendant, any negative information and/or disciplinary action taken against plaintiff as a result of the actions complained of herein.

64. Plaintiff seeks to have the defendant take all disciplinary action required by its rules, policies and procedures against all responsible management officials.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

a.    Award compensatory and punitive damages in excess of Five Hundred Thousand Dollars ($500,000.00);

~~b.      Award, pursuant to 42 U.S.C. Section 2000(e) (5)(k), reasonable attorney's~~
~~fees and costs incurred and for this action; and~~

~~e.Equitable, Declaratory and injunctive relief;~~

~~f.Award such other and further relief as this Court deems just and proper.~~

Respectfully submitted,

By:    _____

Donna Williams Rucker, Esquire
DUBOFF & ASSOCIATES, CHARTERED
8401 Colesville Road, Suite 501
Silver Spring, Maryland 20910
(301) 495-3131    Office
(301) 587-1872    Facsimile

## JURY DEMAND

Plaintiff requests a jury trial on all issues in this case.

_____

Donna Williams Rucker